John Thomas **FAIRCHILD**, Plaintiff,

v.

**UNITED STATES of America,**
Defendant.

Civ. A. No. 1583.

United States District Court
S. D. Mississippi, Jackson Division.

Jan. 28, 1956.

Stanford Morse, Morse & Morse, William E. Logan, Gulfport, Miss., for plaintiff.

Carrington Williams Dept. of Justice, Washington, D. C., Edwin R. Holmes, Jr., Asst. U. S. Dist. Atty., Jackson, Miss., for defendant.

DAWKINS, Sr., District Judge.

Plaintiff seeks a refund of $35,694.71 [1] income taxes, penalty and interest collected in 1954 for the year 1945, upon the grounds (1) they had prescribed and (2) none were due. The Government defended the claim of prescription by alleging fraud and evasion.[2]

This Court held the burden was on the Government to prove fraud to avoid prescription, Boyett v. Commissioner, 5 Cir., 204 F.2d 205; Bryan v. Commissioner, 5 Cir., 209 F.2d 822, and while this is the first issue to be decided, it is so involved with the merits, the two will have to be considered together.

During the year for which the taxes were collected, and for several years both before and after, plaintiff operated a three pronged business on the Mississippi Coast, consisting of a restaurant, bar and gambling club. His records for the first two activities were kept and preserved in a manner to reasonably reflect his income and expenditures, but in operating the last, such records as could be found, showed nothing but winnings entered at the end of each month. Admit-

---

1. Income Tax for 1945 $17,086.26
 Fraud Penalty 50% 8,543.13

 25,629.39
Interest to Settlement
 March 25, 1955 10,065.32

 Total ................. $35,694.71

2. Section 1346(a), Title 28, as amended July 30, 1954.

tedly, all expenses, including salaries of employees and all other expenditures necessary in such a business were paid in cash out of what was termed the "bank roll", a large sum of money kept on his person or in the hands of his gambling manager, which both testified was usually about $25,000. This, of course, left it entirely to him and his trusted agent to say what was or was not a deductible expense, as well as the amount to be attributed thereto, without the possibility of checking any of these items with the alleged recipients, especially since plaintiff made no income tax return at all until 1941 (See Government Exhibit 15). This failure to keep and preserve records, as to the gambling establishment was calculated to bring about, and as a matter of fact, brought about such confusion, that neither the plaintiff nor the accountants, which he at times employed, could tell much about this branch of the business.

There is some intimation that other operators followed the same practice in running gambling houses on the Mississippi Coast, which together with selling intoxicating liquor, we take notice, were and are prohibited under the State law. But this general practice of course could not justify the failure to keep records and make returns when due.

After repeated efforts to obtain records and other information from plaintiff to determine whether he had made correct returns for the period 1948–1950, without success, the investigation was "pushed back" for earlier years including 1945 involved here.

At the request of the agents, plaintiff furnished under date of May 19, 1953, a statement of assets and liabilities for the years, January 1, 1948 through December 31, 1950 (Government Exhibit 10) showing "net worth" at the beginning $148,551.99, and $120,811.25 as of December 31, 1950. Upon being advised by the agents that this statement was wholly inadequate for the reason it had omitted substantial items, plaintiff and his accountant on September 14, 1953 furnished an amended statement (Government Exhibit 11) for the same period showing net worth as of January 1, 1948 $224,651 and $146,611.25 at December 31, 1950, which the agents also informed him was unsatisfactory.

Being unable to obtain from plaintiff what they considered correct records or information, the agents made further investigation of earlier years. They found that the records for the bar and restaurant subsequent to 1946 were sufficient, but entirely inadequate for the gambling room, in that none at all could be found for the years preceding 1946. During the many interviews by the agents of plaintiff and his accountants, the former was asked what his net worth was at the time of completing a building for a new business at Mississippi City in 1946, and plaintiff orally fixed it at approximately $75,000 (R. 214).

In explanation of the item "on hand in Meridian $40,000", appearing on Government "Exhibit 11", Fairchild appeared with his accountant, Roberts, on February 2, 1954 and stated that this $40,000 and some $18,375 in Treasury Bonds had been taken to Meridian because of anticipated trouble with his wife, Ruby Fairchild, which led to a divorce in 1949. As to other items of cash on Government "Exhibit 11", plaintiff explained some $15,000 was kept in cash to buy liquor, $25,000 for the bank roll, with other items including about $10,300 in Hancock Bank of Pass Christian, and other funds in this safe. Fairchild was interrogated as to how he accumulated all the money shown on his statement, and attributed it to the fact he had saved an average of $2,000 a year since he was sixteen years of age, being at that time in his early fifties. Without finding it practical to enumerate the several types of employment, it is sufficient to say that his occupation as a traveling gambler began about 1930 and continued to 1935. Nothing was shown to justify the conclusion that his earnings during these first five years of the depression were more than enough to provide for his family, consisting of a wife and three children. He was also married three times, twice to the same woman with two divorces. All these circumstances

do not warrant the belief that he was getting rich during that time, especially since he failed to pay any income tax until 1943. When plaintiff moved to the coast in 1935 or 1936, he first planned to erect his own building to include a combination restaurant, bar and gambling club, and had purchased about $800 worth of lumber for that purpose, when he was arrested on a charge of bank robbery and was incarcerated for a short time. When he returned his lumber had disappeared, but for some reason he made no effort to learn what had become of it. However, he abandoned the idea of erecting his own building and made an agreement with one Benny French to erect an addition to the latter's building to take care of the gambling end. This was a "Casino" for gambling only, and plaintiff testified it cost some $5,000 or $6,000. The profits from the gambling club were to be divided 50% to Fairchild, 25% to French and 25% to the manager of the Casino. This arrangement continued until 1938 or 1939, during which as stated, he claimed to have realized from $10,000 to $20,000 a year, but kept no records during that time, other than the entry of profits at the end of each month as heretofore described. This testimony as to profits must be weighed in the light of the fact he filed no income tax returns until 1941 and paid no tax until 1943. The record also shows that during the time and into the early forties he was borrowing small sums from banks at large interest rates, and paying them off in installments.

When Fairchild left French he first operated in the old Bradley Club at Henderson Point for about two years, or until about 1940 when he leased the "Beachcomber" at Henderson Point and again ran his own business through

1945, which consisted of a restaurant, bar and gambling club. His first return showed no tax, but on the one filed in 1943, he paid during the year $4,802 as estimated tax and $194.24 as a final installment. For the year 1944, he paid a total of $1,471.71, but received a refund of $597.79 for that year which was credited on his 1945 tax September 9, 1945. For 1945 he paid a balance of $436.93, after crediting the overpayment of $579.-79 made in 1944, or a total of $1,016.72. On the basis of outside information, the agents found plaintiff had been putting large sums of money in bank boxes, banks, etc., and upon this basis the assessment complained of was made and the tax, penalty and interest collected.

With the filing of his suit, plaintiff contended that at the beginning of 1945, he had on hand some $45,000 in cash, enough, if true, to more than eliminate the amount collected. However, the record as a whole indicates rather clearly that, while he was putting large amounts in cash in Meridian, Mississippi and elsewhere during 1945, as he contended, to hide it from his wife, with whom he was having marital trouble, yet the bank box was in both their names, thus affording her equal access to its contents.

 In view of the whole record, I am inclined to conclude that plaintiff was guilty of fraud in attempting to evade payment of his proper income taxes for the year 1945, and that reassessment was not barred by limitations.

 The assessment in this case is presumed to be correct and the burden of proving it otherwise was upon plaintiff. Bryan v. Commissioner supra. Plaintiff set forth in his petition in detail the alleged errors in computing the tax,[3] which he claims "reduced" his net

---

3. "made error of 50c in addition of assets (Error in cost of U. S. Treasury Bonds, Series 'E'). Rum with a cost value of $2,280 has been omitted from taxpayer's balance sheets at 12–31–44 and 12–31–45. An airplane with a cost value of $2,500 has been omitted from taxpayer's assets at 12–31–44. It was disposed of in 1945. The cost value of

'Real Estate'—House and Lot, Henderson Point, Mississippi, sold '1945' has been reduced by $4,250 from $10,500 to $6,-250. Cash in 'Safety Deposit Box' at the Hancock Bank in Pass Christian, Mississippi has been omitted at 12–31–44 in the amount of $45,000 and at 12–31–45 in the amount of $17,500."

worth at the end of 1944 and beginning of 1945 "by $45,000." This claim was denied and the Government relying upon the presumption of correctness as well as information from outside sources as above stated, contends that plaintiff has not only failed to prove an over-assessment, but that the evidence as a whole amply supports the figures and the deficiency assessed.

We cannot overlook the fact that plaintiff's credibility was greatly discounted by conduct which induced the finding of fraud in making the return, but the claimed omissions were supported by his testimony alone. It is true the accountant, testifying from figures furnished largely by complainant, piece meal, after being confronted by other evidence. which the agents had uncovered, purely as a matter of arithmetic, corroborated the result. In addition, practically without exception, plaintiff failed to give definite figures or dates as to purchase price and amounts received for the airplane, houses, run, etc., as well as other important information. Of course, he was called upon to account for all these matters seven or eight years. (1953) after the return for 1945 had been filed in the earlier part of 1946, yet because he had kept records, he was able to furnish information as to the bar and restaurant operations, no doubt mainly because he knew he would have to deal with both State and Federal agencies, in those matters which would be much easier to check. However, in the gambling end, only he and his trusted agent knew what the profits were when making entries of profits alone once a month. There was and could be no way of disputing those figures under such a system. Certainly no Revenue Agent could be expected to find unknown persons who may have lost substantial sums at any time. So the only means left was that used by the agents in checking bank records, investments disclosed by public records, interviewing persons with whom the taxpayer dealt, and rigid interrogation of plaintiff and his employees.

When the agents first confronted plaintiff with figures showing he had in bank boxes and elsewhere substantial sums of money in 1945, it became necessary to show that these and other items formed part of his assets at the beginning of the taxable year. It was then, as stated earlier, that he began to remember, but this alleged accumulation of $45,000 before 1945 was claimed by plaintiff and his "Casino" manager about the time of filing of the present suit. By a rather strange coincidence, he and his agent, who, as stated, had shared in the profits, counted the contents of the lock box late in December 1944 and found exactly $45,000. The reason given for this counting was that the same trusted agent (one Bennett), wished to invest a substantial amount of money in plaintiff's business, and the latter wanted to convince him that additional capital was not needed.

 Without going further into details I am convinced the record not only fails to support plaintiff's contention, but it preponderates in favor of the assessment.

For the reason stated, plaintiff's demands are rejected at his cost.