John Thomas FAIRCHILD, Appellant,

v.

UNITED STATES of America, Appellee.

No. 16095.

United States Court of Appeals Fifth Circuit.

Jan. 25, 1957.

S. E. Morse, William E. Logan, Gulfport, Miss., Morse & Morse, Gulfport, Miss., for appellant.

Helen A. Buckley, Lee A. Jackson, Charles K. Rice, Washington, D. C., E. R. Holmes, Jr., Jackson, Miss., Robert E.

Hauberg, U. S. Atty., Jackson, Miss., I. Henry Kutz, Dept. of Justice, Washington, D. C., for appellee.

Before HUTCHESON, Chief Judge, and HOLMES and BORAH, Circuit Judges.

BORAH, Circuit Judge.

This is an appeal by the taxpayer from a judgment of the District Court for the Southern District of Mississippi rejecting his claim for refund of $35,694.71 which was paid on March 26, 1955, to the U. S. Director of Internal Revenue under a jeopardy assessment consisting of an income tax deficiency for the year 1945 in the amount of $17,086.36, plus fraud penalty and interest.

In his complaint, as in his claim for refund which had been disallowed in full, the taxpayer alleged: (1) that on the date of assessment, June 9, 1954, the statute of limitations had run against the assessment and collection of taxes for the year 1945; and (2) that the Government in placing the taxpayer on a "net worth" basis for 1945 had erroneously omitted $45,000 cash held by him in a safety deposit box on December 31, 1944, and other assets totaling $54,030.50, which, if added to the opening net worth figure, would show that the taxpayer owed no deficiency in income tax for that taxable year.[1] The Government in a responsive pleading denied the material allegations of the claim for refund and affirmatively alleged fraud and evasion on the part of taxpayer in connection with his 1945 income tax return. The issues thus joined, the case was tried on the merits before the court without a jury and at its end the court in a published opinion[2] found all of the material facts in favor of the Government and entered judgment rejecting taxpayer's demands at his cost. From that judgment the present appeal has been taken.

Inasmuch as the deficiency was not timely assessed and, but for proof of fraud such deficiency would have been barred, the first and crucial question raised on this appeal is whether the court correctly held that taxpayer was guilty of fraud and evasion in connection with his 1945 income tax return.

---

1. On the Government's so-called "net worth" exhibit, taxpayer was credited with the following *assets* on December 31, 1944:

| | |
|---|---:|
| Cash on hand | $ 25,000.00 |
| Cash in banks | 12,718.99 |
| Automobiles | 3,800.00 |
| House and lot | 6,250.00 |
| Life insurance, jewelry, other personal effects | 20,000.00 |
| U. S. Treasury Bonds, Series E | 9,131.25 |
| Coupons | 3,000.00 |
| Investment: Restaurant lots | 9,850.00 |

| | | |
|---|---:|---:|
| Total Assets | | $ 89,750.24 |
| To which taxpayer sought to have added: | | |
| Cash on hand (Safety Deposit Box) | $ 45,000.00 | |
| House and lot: additional credit | 4,250.00 | |
| U. S. Bonds (error in addition) | .50* | |
| Airplane | 2,500.00 | |
| Rum on hand | 2,280.00 | |
| Total assets omitted by the Government | | 54,030.50 |
| Correct opening net worth claimed by taxpayer | | $143,780.74 |

The Government credited taxpayer with $126,716.18 total assets at December 31, 1945.

\* Waived by the Government on trial below.

2. Reported at 136 F.Supp. 753.

The court's findings on this issue may be summarized as follows: During the Depression Years, 1930 to 1935, taxpayer was a traveling gambler who was supporting a wife and three children.[3] In 1935 or 1936, taxpayer moved to the Mississippi Gulf Coast where he intended to erect his own building to include a restaurant, bar and gambling club, but later abandoned the idea and entered into an agreement with one Benny French under the terms of which taxpayer agreed to and did erect a gambling "casino" as an addition to the latter's building at a cost of $5,000 or $6,000. This business relationship continued until 1938 or 1939 during which time taxpayer claimed to have made between $10,000 and $20,000 a year as his fifty percent share of the profits from the casino. In 1938 or 1939 the taxpayer severed relations with French and for the next two years operated his own club known as the Bradly Club, from whence he moved in about 1940 to the Beachcomber, which he continued to operate as a restaurant, bar and gambling club up to and including the tax year here involved.

In the light of this history of taxpayer's economic activities and on the basis of all of the testimony and exhibits adduced by the Government, the court further found: (1) that nothing in the record justified the conclusion that taxpayer's earnings between 1930 and 1935 were more than enough to provide for his family, consisting of a wife and three children;[4] (2) that taxpayer kept and preserved records for the Beachcomber restaurant and bar in a manner to reasonably reflect his income and expenditures, but that such records as could be found of his gambling activities showed nothing but winnings entered at the end of each month; (3) that taxpayer's failure to keep records on the gaming rooms so confused him and his own accountants that neither could tell much about this branch of the business, and that the manner in which taxpayer paid salaries of employees and all other expenditures necessary in such a business out of a large sum of cash termed a "bank roll", while reporting only net winnings, resulted in the taxpayer's determination of deductible expenses without a possibility of the Government's checking those items; (4) that after repeated efforts, without success, to obtain records and other information from taxpayer to determine whether he had made correct returns for the period 1948–1950, the investigation by the revenue agents was "pushed back" for earlier years including 1945; and (5) that during the time taxpayer claims to have accumulated an alleged $45,000 cash hoard, by reason of the fact "that he had saved an average of $2,000 a year since he was sixteen years of age",[5] he borrowed small sums at large interest rates from local banks and paid them off in installments. In addition to the foregoing, and as bearing on the fraud issue, the court specifically noted that gambling and selling intoxicating liquor was illegal under Mississippi law; that taxpayer had been arrested on a charge of bank robbery in the 1930's; and that his testimony as to his profits during prior years had to be weighed in the light of the fact that he never filed an income tax return until 1941 and paid no federal income taxes until 1943. Finally, the court ruled upon the issue of fraud, as follows: "the record as a whole indicates rather clearly that, while he was putting large amounts in cash in Meridian, Mississippi, and elsewhere during 1945, as he contended, to hide it from his wife with whom he was having marital trouble,[6] yet the bank box was in both their names thus affording her

---

3. The record shows, however, that he had only *two* children at that time, his third child having been born in 1940.

4. See note 3, supra.

5. At the trial below the agents testified that taxpayer said "he could have saved it, *he didn't say he actually saved it.*" (Italics ours.)

6. The record shows that taxpayer had told the agents he had sent $40,000 to his sister in Meridian to hide it from his wife *in 1948*, not in 1945.

equal access to its contents.[7] In view of the whole record, I am inclined to conclude that plaintiff [taxpayer] was guilty of fraud in attempting to evade payment of his proper income taxes for the year 1945, and that reassessment [sic] was not barred by limitations."

■ We agree with appellant that the judgment may not stand. A careful examination of the entire evidence in this case has left us with the definite and firm conviction that the findings on the issue of fraud were wrong and must be set aside[8] for the reason that the Government has failed to prove by clear and convincing evidence taxpayer's actual and intentional wrongdoing with a specific intent to evade the tax. Goldberg v. Commissioner of Internal Revenue, 5 Cir., 239 F.2d 316; Mitchell v. Commissioner of Internal Revenue, 5 Cir., 1941, 118 F.2d 308.

■ In an effort to establish that the taxpayer failed to report substantial amounts of his taxable income for the year 1945 the Government relied upon the so-called net worth method of proof. It produced and offered in evidence taxpayer's 1945 income tax return showing reported income of $8,002.91, and a worksheet tabulation of taxpayer's assets at December 31 for each of the years 1944 through 1952. From the latter exhibit which shows a total increase in assets of $36,965.84 for the year 1945, it is clear that the Government based its case primarily upon the $35,234.69 increase in taxpayer's year-end bank balances. To prove fraud, however, the Government was bound to establish by clear and convincing evidence that such increases as were reflected by its computations, represented then *current, taxable income*, and by the same degree of proof to show that these increases were not attribu-

table from amounts earned in prior years as was claimed by the taxpayer. Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150. The Government did neither.

■ No attempt was made to establish the correctness of its "net worth" statement other than to offer without explanation the records of taxpayer's accounts at one of the several banks with which he dealt. This offer standing alone had no tendency to show that the increase in "Cash in banks" was derived from current taxable income, for obviously, "the *year-end balance* of a bank account, standing alone, is a fact which has absolutely no necessary connection with the amount of money available, or even deposited during the year." Vloutis v. United States, 5 Cir., 219 F.2d 782, 788. Similarly, there is not sufficient circumstantial evidence here of the taxpayer's financial history to substantiate directly the opening net worth. The trial court's findings relating to taxpayer's financial status during the early 1930's must be considered in the light of United States v. Calderon, 348 U.S. 160, 75 S.Ct. 186, 188, 99 L.Ed. 202, where the tax years involved were 1946 through 1949, and the Government there, as here, sought to show that the taxpayer's defense of a "cash hoard" was highly improbable. The Supreme Court there stated, in language which is applicable here, that "Proof that the taxpayer was impoverished by the depression * * * is too remote, absent proof of the taxpayer's financial circumstances in the intervening years." As to the "intervening years" in the case at bar, 1940 to 1945, it is true that taxpayer did borrow small sums and was occasionally overdrawn in one of his checking accounts in 1940 and 1941, but this meager evidence can hardly give rise to an in-

---

7. The record shows that while Mrs. Fairchild was listed as a co-renter of the safety deposit box from the time it was rented in 1942, she did not sign the agreement and there was no evidence tending to show that she had access to the box other than the rules and regulations printed on the reverse side of the safety deposit box agreement which stated, in part: "In case a safe is rented in the name of more than one person . . . any one thereof may have access thereto . . . ."

8. United States v. U. S. Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746.

ference that taxpayer was unable to accumulate the alleged $45,000 by 1945, especially in view of the fact that in 1943 he paid almost $5,000 income taxes while supporting a wife and three children.

■ Finally, what was said in Holland v. United States, supra, [348 U.S. 121, 75 S.Ct. 135] a criminal case, is pertinent here because the same limitations inhere in the net worth method wherever it is sought to be applied. There the Supreme Court declared:

> "When the Government rests its case solely on the approximations and circumstantial inferences of a net worth computation, the cogency of its proof depends upon its effective negation of reasonable explanations by the taxpayer inconsistent with guilt. Such refutation might fail when the Government does not track down relevant leads furnished by the taxpayer—leads reasonably susceptible of being checked, which, if true, would establish the taxpayer's innocence."

At the trial, the taxpayer claimed that during 1945 he had removed approximately $27,500 from his safety deposit box and deposited it in different banks for the purpose of getting a little interest on it. The significance of his testimony is heightened by the fact that although the agents knew of the safety deposit box from the beginning of their investigation, and despite the fact that taxpayer consistently estimated the amount of cash which he had at the beginning of 1945 to be about $100,000, the agents having the power to request a sworn statement from taxpayer concerning his cash on hand at that time, never did so, and at no time during the investigation or thereafter did they make any specific effort to find out what he had in the box.

Since we find no substantial evidence to sustain the finding of fraud by the District Court, the judgment is reversed and the cause is remanded with directions to enter judgment for appellant in the amount of $35,694.71, with interest thereon, computed in accordance with 28 U.S.C. § 2411.

Reversed and remanded.