Maggie Bailey v. Commissioner.
Bailey v. Commissioner
Docket No. 4171-65.
United States Tax Court
T.C. Memo 1970-64; 1970 Tax Ct. Memo LEXIS 297; 29 T.C.M. (CCH) 272; T.C.M. (RIA) 70064; March 16, 1970, Filed William R. Bagby, 1107 First Nat'l Bldg., Lexington, Ky., for the petitioner, Dennis M. Feeley, for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The Commissioner determined deficiencies in and additions to petitioner's income tax as follows: Year
Income Tax Deficiency
Fraud Penalty 293(b)/6653(b)
Delinquency Penalty 291/6651(a)
Estimated Tax Penalty 294(d)
Negligence Penalty 6653(a)
Total
1942
$ 1,678.50
$ 839.25
$ 419.63
$ 2,937.38
1943
2,738.26
1,369.13
684.57
4,791.96
1944
3,466.44
1,733.22
866.61
6,066.27
1945 5,211.00
2,605.50
1,302.75
496.98
9,616.23
1946
4,031.11
2,015.56
1,007.78
383.69
7,438.14
1947
6,885.86 3,442.93
1,721.47
640.61
12,690.87
1948
3,746.60
1,873.30
936.65
350.96
6,907.51
1949
3,259.65
1,629.82
8 14.91
307.14
6,011.52
1950
3,530.18
1,765.09
882.54
332.20
6,510.01
1951
4,967.27
2,483.63
1,241.82
462.7 4
9,155.46
1952
8,364.40
4,182.20
2,091.10
770.03
15,407.73
1953
5,117.16
2,558.58
1,279.29
477.78
9,43 2.81
1954
4,639.33
2,457.17
(68.75)
444.58
7,472.33
1955
4,008.98
2,004.49
6,013.47
1956
3,997.65
1,998.82
(19.77)
5,976.70
1957
4,400.79
2,200.40
(18.46)
6,582.73
1958
4,774.37
2,387.18
7,161.55 l1959
4,784.43
2,392.22
7,176.65
1960
4,609.19
2,304.59
6,913.78
1961
5,009.88
2,504.94
7,514.82
1962
5,721.49
2,860.74
8,582.23
1963 6,687.86
3,343.93
10,031.79
Total
$101,630.40
$50,952.69
$13,180.37
$4,666.71
($38.23)
$170,391.94
*299 This case involves the application of the net worth increase and nondeductible expenditures method of income reconstruction for the years 1942 through 1963. We must also decide whether the assessment of the tax for any of these years is barred by the statute of limitations, section 6501, I.R.C. 1954, and whether there are due various additions to tax under section 293 (b), I.R.C. 1939 and 6653(b), I.R.C. 1954; 294(d)(1)(A), and 291(a), I.R.C. 1939, the material portions of which are in the margin. [1]
*300 Findings of Fact Some of the facts have been stipulated. The stipulation and exhibits attached thereto are incorporated herein by this reference. 274 Maggie Bailey (hereinafter referred to as petitioner) resided in Clovertown, Harlan, Kentucky at the time the petition herein was filed. Petitioner filed timely individual income tax returns for the years 1955 through 1963 with the district director of internal revenue, district of Kentucky. She filed no Federal income tax returns for the years 1942 through 1954. During most of the years before us, petitioner was engaged in an unlawful retail liquor business in Harlan County, Kentucky. By reputation she was the largest bootlegger in Harlan County. Petitioner was born August 12, 1904 in Letcher County, Kentucky. At the age of 16 she left home, having attended school through the seventh or eighth grade, and traveled to Harlan where she worked as a waitress. In 1921, she began her liquor business, starting with moonshine whiskey. Through the years petitioner has sold legal or "red" whiskey and illegal or "bootlegged" whiskey. In 1940 petitioner was arrested for possessing untaxed liquor and was sentenced to two 2-year terms *301 in the Federal Women's Reformatory at Alderson, West Virginia, the terms running concurrently. Petitioner began serving her sentences in May 1941. From 1921 to 1941, petitioner's business prospered. As of December 31, 1941, petitioner had accumulated a cash hoard of $80,000. On approximately July 1, 1945, petitioner resumed her liquor business in Harlan, which she conducted in the home of her sister, Maude Davidson Hurst ("Maude"). Petitioner did not file Federal income tax returns for the taxable years 1945 through 1954. In 1955, petitioner was examined by Revenue Agent Harold Cooke for those prior years. He set up gross income of $3,240, deductible expenses of $240, and calculated petitioner's income tax on a net profit of $3,000 per year. Cooke also set up the late filing penalty of 25 percent for each of the years and this was included in the Form 870. Revenue Agent Cooke's report reflected the following determinations: *10 Deficiencies
Year Ended
Tax
Penalty 291(a) I.R.C. 1939
12/31/45
$ 311.00
$ 77.75
12/31/46
232.00
58.00
12/31/47
232.00
58.00
12/31/48
153.00
38.25
12/31/49
153.00
38.25
12/31/50
161.00
40.25
12/31/51
255.50
63.87
12/31/52
272.50
68.13
12/31/53
272.50
68.13
12/31/54 275.00
68.75 $2,317.50
$579.38
*302 Petitioner consented to the assessment and collection of these deficiencies by signing a Form 870. She did not file any returns for these years. Petitioner filed her 1955 tax return disclosing an income tax liability of $209.27. This amount together with the amounts above referred to for the years 1945 through 1954 total $3,106.15, which amount 275 petitioner paid during 1956. During 1956 petitioner also paid the Government interest in the amount of $753.22. Petitioner filed income tax returns for the years 1956 through 1963 disclosing adjusted gross income and income tax liability, as follows: Year
Adjusted Gross Income
Tax Liability
1956
$ 704.77
$ 21.14
1957
871.24
29.40
1958
2,549.07
303.03
1959
2,038.73
203.35
1960
1,851.32
178.31
1961
1,273.18
57.29
1962
1,695.44
79.69
1963
2,694.95
389.53
In 1959, Revenue Agent Jimmie R. Amyx examined petitioner's 1956 and 1957 returns. He found increased income tax liability and penalty of $395.40 and $19.77 for 1956 and of $369.11 and $18.46 for 1957. Petitioner consented to the assessment and collection of these deficiencies by signing a Form 870 prepared by Agent Amyx. Petitioner *303 paid the increased tax liabilities and penalties for 1956 and 1957 in 1959. During 1959 petitioner also paid the Government interest in the amount of $70.26. Petitioner paid the following amounts of Federal income taxes during the indicated years: Year
Amount
1942-1955
$-0-
1956
3,106.15
1957
21.14
1958
29.40
1959
1,105.77
1960
203.35
1961
178.31
1962
57.29
1963 79.69 $4,781.10
On February 18, 1965, the Kentucky State Police, pursuant to a valid search warrant, entered the premises upon which petitioner carried on her illegal liquor business. In the course of their search for contraband liquor, the police discovered a footlocker containing $206,909 in cash, all of which belonged to petitioner. The state police notified the Internal Revenue Service of their discovery of petitioner's cash hoard. As of December 31, 1963, petitioner had a cash hoard of $200,000. Petitioner's inventory of liquor and beer at the end of each of the years 1941 through 1963 remained approximately constant; there was no appreciable change in the amount of inventory on hand at the end of any year from the amount on hand at the end of the preceding year. During the *304 years 1941 through 1963, petitioner owned furniture and fixtures (at cost) as follows: Year
Cost
Year
Cost
Year
Cost
1941
$-0-
1949
$-0-
1957
$ 500.00
1942
-0-
1950
-0-
1958
500.00
1943
-0-
1951
-0-
1959
613.75
1944
-0-
1952
-0-
1960
613.75
1945
-0-
1953 -0-
1961
1,199.48
1946
-0-
1954
-0-
1962
1,413.80
1947
-0-
1955
-0-
1963
2,123.69
1948
-0-
1956
-0-
Petitioner's year-end liabilities to Pope-Cawood Lumber Co. and to the General Electric Credit Corp., were as follows: *10 Pope-Cawood Lumber Co.
Year
Amount
Year
Amount
Year
Amount
1941
$-0-
1949
$-0-
1957
$ 392.46
1942
-0-
1950
-0-
1958
-0-
1943
-0-
1951
-0-
1959
32.22
1944
-0-
1952
-0-
1960
1,309.30
1945
-0-
1953
-0-
1961
-0-
1946
-0-
1954
-0-
1962
179.54
1947
-0-
1955
-0-
1963
2,973.83 276 *10 General Electric Credit Corp.
Year
Amount
Year
Amount
Year
Amount
1941
$-0-
1949
$-0-
1957
$-0-
1942
-0-
1950
-0-
1958
-0-
1943
-0-
1951
-0-
1959
-0-
1944
-0-
1 952
-0-
1960
-0-
1945
-0-
1953
-0-
1961
416.66
1946
-0-
1954
-0-
1962
248.47
1947
-0-
1955
-0-
1963
561.13
1948
-0-
1956
-0-
*305 Beginning in 1941 petitioner paid the following amounts for improvements to real estate belonging to Maude: Year
Amount
Year
Amount
Year
Amount
1941
$-0-
1949
$-0-
1957
$ 692.46
1942
-0-
1950
-0-
1958
-0-
1943
-0-
1951
300.00
1959
-0-
1944
-0-
1952
550.00
1960
3,980.00
1945
-0-
1953
900.00
1961
1,050.00
1946
-0-
1954
-0-
1962
-0-
1947
-0-
1955
400.00
1963
6,060.00
1948
-0-
1956 90.00
$2,240.00
$11,782.46
Petitioner has always lived frugally. During the period July 1, 1945 through 1963, she lived in the house of her sister Maude. She paid no rent and spent very little for her clothing. She regularly wore tennis shoes, purchasing about two pairs a year, and discarded employees' uniforms of the National Distillers Company in Louisville which were given to her. She also bought cheap denim house dresses costing a few dollars. Petitioner did not frequent beauty salons. She has never owned an automobile and traveled only occasionally, to visit a sister in Louisville. She and Maude raised vegetables and hogs behind Maude's house. Petitioner paid for a telephone and for electricity, coal and gas. *306 For the years 1942 through 1963 petitioner made the following amounts of non-deductible personal expenditures which were in addition to her gifts of real estate improvements to Maude, and her payments of taxes, penalties and interest to the Government: Year
Amount
Year
Amount
1942
$ 300
1953
$1,100
1943
500
1954
1,400
1944
500
1955
1,300
1945
500
1956
2,300
1946
500
1957
1,5 00
1947
500
1958
1,900
1948
700
1959
2,100
1949
700
1960
1,900
1950
900
1961
2,400
1951
1,200
1962
3,100
1952
2,000
1963
3,400
During the years in question, petitioner at no time maintained any checking, savings or other bank accounts. Petitioner dealt in cash exclusively. She owned no postal savings certificates, no bail bond receipts, and no real property. For the taxable years 1958 through 1963 petitioner and Maude filed partnership returns, each reporting on her individual return a portion of the income reported thereon. Petitioner did not actually engage in business in partnership with Maude, who was an incompetent. Petitioner did not own any property subject to an allowance of depreciation during any of the years 1942 through 1963. *307 Petitioner is entitled to the allowance of deductions for personal exemptions for herself for each of the years 1942 through 1963, and for her sister Maude for each of the years 1952 through 1963. She is entitled to no other exemptions. Petitioner did not keep any books or other records of any description during any of the years 1942 through 1963. She was served with an inadequate records notice, Form 7021, on March 26, 1956. Petitioner failed to report or understated her taxable income for each of the years 1945 through 1963 in substantial amounts. Due to the discovery of the $206,909 by the Kentucky State Police and to 277 petitioner's failure to keep adequate records, the Commissioner instituted a net worth examination which resulted in his determination of the deficiencies for the years 1942 through 1963. Opinion Issue 1. Reconstruction of Income Petitioner does not contest the use of the net worth increase method in reconstructing her net income. At issue initially are the purely factual questions concerning the accuracy of certain figures used by the Commissioner in his net worth statement: (1) the amount of petitioner's cash hoard as of the opening and closing *308 dates of the period; (2) the amount of inventory on hand at the close of each of the years 1942 through 1963; and (3) the amount of living expenses and other nondeductible expenditures made by petitioner during each of the years 1942 through 1963. These questions we have resolved in our findings of fact. In making our findings we have given our most thoughtful attention to all the evidence at our disposal. We do not think that a detailed recitation of the evidence would serve any useful purpose. We have eliminated the deficiencies which the Commissioner determined for the taxable years 1942 through 1944. It appears that after her release from prison, petitioner did not resume her bootlegging business until July 1, 1945. Since this business was petitioner's only source of income we have reconstructed her income by the net worth method over the period she was engaged therein, i.e. July 1, 1945 through December 31, 1963. We have found that petitioner had a cash hoard of $80,000 as of December 31, 1943. By her own testimony petitioner admits she did not have more than $80,000 at that time. We have found, consistently with the Commissioner's determination, that petitioner had a cash *309 hoard of $200,000 as of December 31, 1963. This figure was arrived at on the basis of the discovery of $206,909 by the Kentucky State Police on February 18, 1965. Petitioner has argued at considerable length that the amount discovered by the police was actually less than $206,909. The primary witness as to the money count called by the Commissioner was a detective sergeant of the Kentucky State Police. He did not actually count the money but kept a tally sheet on which he noted figures called off to him by two other troopers. These other troopers were not called as witnesses at the trial. Nevertheless, we are persuaded that the police accurately counted $206,909. We think the Commissioner's determination that petitioner had a cash hoard of $200,000 as of December 31, 1963 is a reasonable approximation based on established facts, and we have made our finding in accordance therewith. In determining the deficiencies herein the Commissioner back-cast the cash over the intervening years until he ran out of money, allocating an amount to each year as he thought reasonable. In our redetermination we have adopted a somewhat similar method, which we think reasonable in the circumstances. *310 We have found there was no measurable increase or decrease in petitioner's inventory from year's end to year's end. There is no evidence that petitioner's inventory was ever very substantial. There was evidence of the general decline in prosperity, and in population, in Harlan County during the period petitioner was in business. We do not think we can reasonably make any assumptions as regards petitioner's inventory and we have resolved this question in her favor. We have found that petitioner incurred living expenses in a stated amount for each year. We considered very carefully all of the evidence presented to us on this question. We believe these findings, while consistent with the evidence, are generous to the petitioner. Petitioner's actual living expenses presumably are a matter of her personal knowledge, which she was reluctant, as appears from the record, to share with us. We think it is reasonably probable that petitioner had approximately the same amount of adjusted gross income during each of the years (one-half for 1945) 1945 through 1963. We have allocated petitioner's increase in net worth for the period July 1, 1945 through December 31, 1963 in such a way as to *311 cause her adjusted gross income to be evenly spread over the period and find the following: 278 *10 RECONSTRUCTION OF INCOME
Assets 12/31/41
12/31/42
12/31/43
12/31/44
12/31/45
12/ 1/46
Cash on Hand
$ 80,000
$ 80,000
$ 80,000
$ 80,000
$84,007.90
$92,523.70
Furnishings & Fixtures --
--
--
--
--
--
Total Assets
80,000
80,000
80,000
80,000
84,007.90
92,523.70
Liabilities
Pope-Cawood Lumber Co.
--
--
--
--
--
--
General Electric Credit Corp. --
--
--
--
--
--
Total Liabilities
--
--
--
--
--
--
Net Worth 80,000
80,000
80,000
80,000
84,007.90
92,523.70
Increase in Net Worth
--
--
--
--
4,007.90
8,515.80
Add: Federal Income Taxes and Penalties Paid
--
--
--
--
--
--
Living Expenses and Other Nondeductible Expendi- tures
500.00
700.00
Real Estate Improvements --
--
--
--
--
--
Adjusted Gross Income Determined
--
300
500
500
4,507.90
9,015.80
Amount Reported or as Previously Adjusted --
--
--
--
3,000.00
3,000.00
Additional Income
$ --
$ 300
$ 500
$ 500
$ 1,507.90
$ 6,015.80
Assets 12/31/47
12/31/48
12/31/49
12/31/50
12/31/51
12/31/52
Cash on Hand
$101,039.50
$109,355.30
$117,671.10
$125,786.90
$133,302.70
$139,768.50
Furnishings & Fixtures --
--
--
--
--
--
Total Assets
101,039.50
109,355.30
117,671.10
125,786.90
133,302.70
139,768.50
Liabilities
Pope-Cawood Lumber Co.
--
--
--
--
--
--
General Electric Credit Corp. --
--
--
--
--
--
Total Liabilities
--
--
--
--
--
--
Net Worth 101,039.50
109,355.30
117,671.10
125,786.90
133,302.70
139,768.50
Increase in Net Worth
8,515.80
8,315.80
8,315.80
8,115.80
7,515.80
6,465.80
Add: Federal Income Taxes and Penalties Paid
--
--
--
--
--
--
Living Expenses and Other Nondeductible Expendi- tures
500.00
700.00
700.00
900.00
1,200.00
2,000.00
Real Estate Improvements --
--
--
--
300.00
550.00
Adjusted Gross Income Determined
9,015.80
9,015.80
9,015.80
9,015.80
9,015.80
9,015.80
Amount Reported or as Previously Adjusted 3,000.00
3,000.00
3,000.00
3,000.00
3,000.00
3,000.00
Additional Income
$ 6,015.80
$ 6,015.80
$ 6,015.80
$ 6,015.80
6,015.80
$ 6,015.80
*312 279 Assets 12/31/53
12/31/54
12/31/55
12/31/56
12/31/57
12/31/58
Cash on Hand
$146,784.30
$154,400.10
$161,715.90
$165,235.55
$171,930.21
$178,624.15
Furnishings & Fixtures --
--
--
--
500.00
500.00
Total Assets
146,784.30
154,400.10
161,715.90
165,235.55
172,430.21
179,124.15
Liabilities
Pope-Cawood Lumber Co.
--
--
--
--
392.46
--
General Electric Credit Corp. --
--
--
--
--
--
Total Liabilities
--
--
--
--
392.46
--
Net Worth 146,784.30
154,400.10
161,715.90
165,235.55
172,037.75
179,124.15
Increase in Net Worth
7,015.80
7,615.80
7,315.80
3,519.65
6,802.20
7,086.40
Add: Federal Income Taxes and Penalties Paid
--
--
--
3,106.15
21.14
29.40
Living Expenses and Other Nondeductible Expendi- tures
1,100.00
1,400.00
1,300.00
2,300.00
1,500.00
1,900.00
Real Estate Improvements 900.00
--
400.00
90.00
692.46
--
Adjusted Gross Income Determined
9,015.80
9,015.80
9,015.80
9,015.80
9,015.80
9,015.80
Amount Reported or as Previously Adjusted 3,000.00
3,000.00
2,142.48
3,117.88
2,978.10
2,549.07
Additional Income
$ 6,015.80
$ 6,015.80
$ 6,873.32
$ 5,897.92
$ 6,037.70
$ 6,466.73
Assets 12/31/59
12/31/60
12/31/61
12/31/62
12/31/63
Cash on Hand
$184,352.65
$188,562.18
$192,471.30
$198,126.84
$200,000.00
Furnishings & Fixtures 613.75
613.75
1,199.48
1,413.80
2,123.69
Total Assets
$184,966.40
$189,175.93
$193,670.78
$199,540.64
$202,123.69
Liabilities
Pope-Cawood Lumber Co.
32.22
1,309.30
--
179.54
2,973.83
General Electric Credit Corp. --
--
416.66
248.47
561.13
Total Liabilities
32.22
1,309.30
416.66
428.01
3,534.96
Net Worth 184,934.18
187,866.63
193,254.12
199,112.63
198,588.73
Increase in Net Worth
5,810.03
2,932.45
5,387.49
5,858.51
(523.90)
Add: Federal Income Taxes and Penalties Paid
1,105.77
203.35
178.31
57.29
79.69
Living Expenses and Other Nondeductible Expendi- tures
2,100.00
1,900.00
2,400.00
3,100.00
3,400.00
Real Estate Improvements --
3,980.00
1,050.00
--
6,060.00
Adjusted Gross Income Determined
9,015.80
9,015.80
9,015.80
9,015.80
9,015.79
Amount Reported or as Previously Adjusted 2,038.73
1,851.32
1.273.18
1,695.44
2,694.95
Additional Income
$ 6,977.07
$ 7,164.48
$ 7,742.62
$ 7,320.36
$ 6,320.84
*313 Issue 2. Fraud The Commissioner has determined that petitioner is subject for each of the years 1942 through 1963 to the additions to tax provided by section 6653(b) (section 293(b) of the Internal Revenue Code of 1939 for the earlier taxable years). Section 6653(b) (and section 293(b), I.R.C. 1939) provides that if any part of any underpayment of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. The Commissioner must prove with respect to any particular year by "clear and convincing evidence," Arlette Coat Co., 14 T.C. 751, that some part of the underpayment of tax for that year is due to fraud. "Fraud" means actual, intentional wrongdoing, and the intent required is the specific purpose to evade a tax believed to be owing. Mitchell v. Commissioner, 118 F. 2d 308 (C.A. 5, 1941). The question of intention is a factual one to be resolved from a consideration of the entire record. M. Rea Gano, 19 B.T.A. 518. We consider first the years 1945 [2] through 1954. Section 293(b) of the 1939 Code provides that "if any part of any deficiency *314 is 280 due to fraud," a fraud penalty shall be imposed at the rate of 50 percent of the total amount of the deficiency. Since petitioner filed no returns for these years, when the deadline for filing a return for each of these years had passed, a "deficiency" in the amount of "the tax imposed" came into existence. Cirillo v. Commissioner, 314 F. 2d 478 (C.A. 3, 1963), affirming in part and reversing in part, on other grounds, a Memorandum Opinion of this Court. In other words, if petitioner had taxable income during any of these years there was a "deficiency" within the meaning of section 293(b) of the 1939 Code for that year. We think the entire record establishes by the requisite clear and convincing evidence that petitioner had substantial taxable income during each of these years 1945 through 1954 with the consequence that there are deficiencies for such years. In order to sustain the fraud penalty for any year, however, the Commissioner must further prove that petitioner's failure to file a return for such year was due *315 to fraud with the deliberate intention to cheat the Government out of taxes which she believed were owing. The record must contain some convincing affirmative indication of the required specific intent. Cirillo v. Commissioner, supra.Repeated understatements of income, or failure to file returns such as we have found to exist, are evidence from which fraud may be inferred, Nathan Bilsky, 31 T.C. 35, but are not alone sufficient to meet the clear and convincing evidence test. John Marinzulich, 31 T.C. 487, 490. We think, with respect to the evidence which relates to the years 1945 through 1954 the record is devoid of any affirmative indication that petitioner deliberately cheated the Government. Petitioner's failure to keep books and records is equivocal at best. While we do not doubt that petitioner possessed a shrewd intelligence, we recognize that she did not conduct her business with such sophistication that the absence of records can be regarded as evidence of a deliberate concealment of income. Nor do we think that petitioner's dealing exclusively in cash is particularly suspect. We think it is safe to assume that all petitioner's purchases *316 of inventory as well as the receipts from her "roadhouse" package liquor business were in cash. It appears petitioner distrusted banks, and would not have been convenienced in any way by the use of a checking account. While we have more difficulty understanding why petitioner failed to file returns for these years, we do not think the mere failure to file returns, in the absence of other damning circumstances, establishes by clear and convincing evidence that such failure was fraudulent. We consider next the years 1955 through 1963, for which years petitioner filed timely returns. With respect to these years, we cannot find that the Commissioner has proven by clear and convincing evidence that a deficiency in tax existed for any particular year. We think it is sufficient here to state that while the Commissioner has proven with reasonable accuracy an increase in net worth over a period of nineteen and one-half years, which can be explained in this case only by petitioner's receipt of taxable income during this period, he has failed to relate that income sufficiently to any specific year for which he asserts the addition to tax for fraud, Fairchild v. United States, 240 F. 2d 944 *317 (C.A. 5, 1957); Holland v. U.S., 348 U.S. 121, and has failed to prove the omission of any specific item of income in any of these years. John Marinzulich, supra.
Issue 3. Additions to the Tax under Section 291, I.R.C. 1939 The Commissioner has determined that petitioner is subject for each of the years 1942 through 1953 to the additions to tax provided by section 291, I.R.C. 1939. Section 291 provides for additions to tax in the case of a delinquent return, unless it is shown that such failure is due to reasonable cause and not due to willful neglect. Petitioner has not shown that her failure to file returns for any of these years (at least until she signed the Form 870 on December 14, 1955) was due to reasonable cause and not due to willful neglect. Accordingly, we uphold the Commissioner's determination limited to the years after 1944 as heretofore explained. Issue 4. Additions to the Tax under Section 294(d)(1), I.R.C. 1939 The Commissioner has determined that petitioner is subject for each of the years 1945 through 1954 to the additions to tax provided by section 294(d)(1), I.R.C. 1939. Section 294(d)(1) provides for additions to tax in the *318 case of a failure to file a declaration of estimated tax unless such failure is 281 shown to be due to reasonable cause and not to willful neglect. Petitioner has not shown that her failure to file declarations of estimated tax was due to reasonable cause and not to willful neglect. Accordingly, we uphold the Commissioner's determination. Issue 5. Statute of Limitations Petitioner has pleaded that the assessment and collection of the deficiencies for the years 1942 through 1961 are barred by the statute of limitations. Petitioner did not file returns for any of the years 1942 through 1954. Accordingly there is no limitation upon the time for assessment and collection of the taxes for these years. Section 276(a), I.R.C. 1939; Section 6501(c)(3). The Commissioner alleges that the years 1955 through 1961 are open because petitioner's returns for these years were fraudulent. Section 6501(c)(1). The Commissioner, where seeking to avoid the statute of limitations by reason of fraud, has the burden of proving fraud by clear and convincing evidence. Bryan v. Commissioner, 209 F. 2d 822 (C.A. 5, 1954), affirming a Memorandum Opinion of this Court. The Commissioner *319 has failed to meet his burden of proof. We hold that the assessment of deficiencies for the years 1955, 1956, and 1957 is barred by the statute of limitations, section 6501(a). The Commissioner alleges that the years 1958, 1959, and 1960 are open because petitioner, with respect to her return for each of these years, omitted from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return, in which case the tax may be assessed at any time within 6 years after the return was filed. Section 6501(e). For the purpose of section 6501, an early return shall be considered as filed on the last day prescribed for the filing thereof, section 6501(b)(1), i.e., April 15, 1959 for petitioner's 1958 return. The Commissioner's jeopardy assessment for each of these years was made on April 12, 1965, within the six-year period. The Commissioner has the burden of proving that petitioner omitted from gross income an amount properly includible therein and that the amount so omitted was in excess of 25 percent of the gross income reported by her in the return for the taxable year in issue. Frank W. Williamson, 27 T.C. 647. *320 While this burden of proof is not met merely by the presumption of correctness attaching to his deficiency notice, we have made our own determination sustaining in part his determination with respect to the deficiencies arrived at for these years sufficient to raise the bar of the statute of limitations, section 6501(e). The year 1961 is open because assessment of the tax for this year was made on April 12, 1965, within the normal three-year period. Section 6501(a). Decision will be entered under Rule 50. Footnotes
1. SEC. 293(b), I.R.C. 1939. (b) Fraud. - If any part of any deficiency is due to fraud with intent to evade tax, then 50 per centum of the total amount of the deficiency (in addition to such deficiency) shall be so assessed, collected, and paid, in lieu of the 50 per centum addition to the tax provided in section 3612(d)(2). SEC. 6653(b), I.R.C. 1954. (b) Fraud. - If any part of any underpayment (as defined in subsection (c)) of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. In the case of income taxes and gift taxes, this amount shall be in lieu of any amount determined under subsection (a). SEC. 294(d)(1)(A), I.R.C. 1939. (d) Estimated Tax. - (1) Failure to file declaration or pay installment of estimated tax. - (A) Failure to File Declaration. - In the case of a failure to make and file a declaration of estimated tax within the time prescribed, unless such failure is shown to the satisfaction of the Commissioner to be due to reasonable cause and not to willful neglect, there shall be added to the tax 5 per centum of each installment due but unpaid, and in addition, with respect to each such installment due but unpaid, 1 per centum of the unpaid amount thereof for each month (except the first) or fraction thereof during which such amount remains unpaid. In no event shall the aggregate addition to the tax under this subparagraph with respect to any installment due but unpaid, exceed 10 per centum of the unpaid portion of such installment. For the purposes of this subparagraph each installment shall be considered to be an amount equal to the amount that would have been due and payable if a declaration showing an estimated tax in the amount of the correct tax had been timely filed, and one such installment shall be considered due on the fifteenth day of the last month of that quarter of the taxable year in which the declaration is required to be filed, and another such installment shall be considered due on the fifteenth day of the last month of each succeeding quarter of the taxable year. SEC. 291, I.R.C. 1939. SEC. 291. FAILURE TO FILE RETURN. (a) In case of any failure to make and file return required by this chapter, within the time prescribed by law or prescribed by the Commissioner in pursuance of law, unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the tax: 5 per centum if the failure is for not more than thirty days with an additional 5 per centum for each additional thirty days or fraction thereof during which such failure continues, not exceeding 25 per centum in the aggregate. The amount so added to any tax shall be collected at the same time and in the same manner and as a part of the tax unless the tax has been paid before the discovery of the neglect, in which case the amount so added shall be collected in the same manner as the tax. The amount added to the tax under this section shall be in lieu of the 25 per centum addition to the tax provided in section 3612(d)(1).↩
2. As we have eliminated the deficiencies for the years 1942 through 1944, there can be no additions to tax for fraud for such years.↩