Joe TRAUM and Mae Traum, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 11667.

United States Court of Appeals Seventh Circuit.

Oct. 12, 1956.

Howard R. Slater, Chicago, Ill., for petitioners.

Charles K. Rice, Asst. Atty. Gen., Meyer Rothwacks, Atty., Tax Division, U. S. Dept. of Justice, Washington, D. C., Lee A. Jackson, Robert N. Anderson, Dept. of Justice, Washington, D. C., for respondent.

Before MAJOR, FINNEGAN and SWAIM, Circuit Judges.

MAJOR, Circuit Judge.

This is a petition for review of a decision of the Tax Court of the United States, entered September 23, 1955, in which it was held that there was a deficiency in petitioners' income tax for the year 1947 in the amount of $4,407.25; 1948, $13,283.01; 1949, $15,156.51, and 1950, $4,227.24. The deficiencies thus sustained by the Tax Court were those determined by respondent, except for the year 1947. For that year respondent had determined a deficiency of $9,431.39, whereas the Tax Court reduced it to $4,407.25. Respondent also determined a 50% additional tax for each year because of the asserted fraud on the part of taxpayers. The Tax Court concluded that there was no basis for this additional assessment and rejected the Commissioner's contention in that respect.

Taxpayers during a part of 1947 operated a restaurant variously known as Traum's Show Lounge, Restaurant Lounge, and Show Lounge, which was closed during that year. In March of the same year, taxpayers undertook the active management of the Manor House, a private club which belonged to the Syrian Patriotic Club, Inc. At that time the Manor House was being managed by Joe Traum, Jr., a son of the taxpayers, and was in need of financial assistance. The Manor House operated a restaurant and a club room which was a gambling casino. Separate books were kept for each of these activities. All income received at the Manor House was considered as corporate income and purportedly was entered as such on the books of the Syrian Patriotic Club, Inc. The real property in which the Manor House operated was owned by petitioner, Mae Traum. Except for the year 1947, when they also operated the Show Lounge, the business activities of petitioners in the years 1947 to 1950, inclusive, comprised in addition to the Manor House restaurant and club room the operation of slot machines located in various clubs in Terre Haute, Indiana, the distribution of lottery tickets and the ownership of an interest in a crap game. During the taxable years in controversy the taxpayers employed the same bookkeeper to keep their personal books (under the name of Traum's Show Lounge) and the books of the Manor House. This bookkeeper on occasions obtained advice from a certified public accountant as to the proper accounting procedure to be employed. The same public accountant had prepared the taxpayers' income tax returns for the years in question from information furnished by the bookkeeper and by petitioner, Joe Traum.

Counsel who had represented petitioners during the Tax Court proceedings withdrew from the case at or shortly after the rendition of the Tax Court decision and present counsel was retained. Such counsel filed a motion for leave to file a motion for further hearing, setting forth that certain additional evidence was available to show the arbitrary method employed by respondent in redetermining the income of the taxpayers for the years involved and also that the taxpayers had not been given adequate advance information which would enable them to recognize and prepare to meet factual issues so as to warrant imposing the burden of proof upon them. This motion was denied by the Tax Court, as well as a subsequent motion to vacate the Tax Court decision upon substantially the same grounds as had been asserted in the previous motion.

The principal issues before this court, as asserted by petitioners, are (1) that the findings of the Tax Court are not sufficient to indicate the basis for its decision, (2) that taxpayers were not given adequate advance information as to the factual issues so as to enable them to meet such issues and so as to warrant imposing the burden of proof upon them and (3) that the Tax Court abused its discretion in refusing to allow a further hearing and in refusing to vacate its decision in the light of petitioners' representation as to the existence of additional evidence asserted to reflect upon the arbitrary methods employed by respondent in reconstructing the income of petitioners.

■ We see no point in setting forth or discussing the myriad figures and calculations contained in the record and in the briefs. It is sufficient to state that after a careful examination of the record we are satisfied that the decision of the Tax Court must be sustained. Taxpayers urgently insist that the Commissioner was without authority to reject their books as properly reflecting their taxable income for the years in controversy. This contention has little, if any, merit. Section 41 of the Internal Revenue Code of 1939, Title 26 U.S.C.A. § 41, provides: " * * * if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. * * * " A reading of the testimony of Joe Traum, as well as that of his bookkeeper and accountant, clearly discloses that the books reflect no more than the income derived from the Show Lounge and the Manor House; in fact, it is doubtful if the books properly reflected that income. In addition, Traum admittedly had other interests and possible sources of unreported income not reflected in these books. As to this additional income, the testimony shows that taxpayer Joe Traum supplied the accountant with information as to the amounts. In other words, the income derived from gambling operations was not disclosed by the books upon which the taxpayers rely. Such being the situation, the Commissioner was authorized to utilize some other method for the purpose of determining the taxpayers' income.

The Commissioner in determining the income of the taxpayers employed what is known as the bank deposit and expenditure method. This method, like the net worth system of arriving at income, no doubt encompasses an area of some uncertainty, but, like the net worth method, has been approved by the courts. See United States v. Doyle, 7 Cir., 234 F. 2d 788, 793, and Doll v. Glenn, 6 Cir., 231 F.2d 186, 188. In fact, petitioners concede that the Commissioner was authorized to employ a method which, in his opinion, clearly reflected their income if their books and records did not do so.

■ As we understand, petitioners make no denial of the fact that monies were received by them as shown by their bank deposits and expenditures. Their attempted explanation is that bank deposits and expenditures did not reflect income because they included borrowed money and money which taxpayer Joe Traum had on hand at the beginning of the taxable period. Testimony in support of this thesis was self-serving and of such an uncertain nature that the Tax Court was justified in refusing to accept it. Reference to the testimony relative to two of the more important of such items is illustrative. Taxpayers attempted to prove by the bookkeeper that Barbara Semelich and her husband during 1950 loaned to taxpayers the sum of $10,279.20. Regarding this alleged loan the Tax Court properly stated: "Lastly, petitioners tried to prove the existence of the Semelich loan by testimony of their bookkeeper that she cashed the check and gave the money to Joe Traum. However, the bookkeeper further testified that the check was for an unknown amount and payable to an unknown payee. In addition the date of this alleged loan was uncertain."

■■ Also, taxpayer Joe Traum testified that at the beginning of 1947 he had approximately $8,000 on hand. If true, he was entitled to credit for that amount against unreported income as determined by the Commissioner. However, his testimony was uncorroborated and not persuasive. He testified that he kept the money in a safe in the office of the Show Lounge and that no other person knew it was there. Also, on cross-examination, he would neither affirm nor deny that he had previously told revenue agents that he had no cash on hand at the commencement of the taxable period. Certainly the Tax Court was not required under the circumstances to accept his testimony as a verity. Cf. Bodoglau v. Commissioner, 7 Cir., 230 F.2d 336,

340; Humphreys v. Commissioner, **7** Cir., 125 F.2d 340, 343, and Birnbaum v. Commissioner, 7 Cir., 117 F.2d 395, 396.

Petitioners argue that respondent's deficiency notice and accompanying schedule failed to adequately state the facts and the theory upon which the deficiencies were determined. For this reason, so it is argued, there should not be imposed upon petitioners the burden of overcoming respondent's determination. A study of the record, however, dissipates any merit which might otherwise attach to the argument. Certainly petitioners had knowledge at the hearing that respondent had included in their unreported income large sums of money, as shown by proof of their bank deposits and expenditures. Petitioners, without disputing the receipt of such sums of money, attempted to place it in the non-income category by showing, as previously noted, that it included money which had been loaned them and cash on hand at the beginning of the taxable period as well as other items representing a return on capital investments. Thus, the issue presented at the hearing by respondent was accepted and attempted to be met by petitioners. However, this attempt on the part of petitioners failed, as the Tax Court held, for the lack of evidentiary support. With this holding we agree.

We have examined petitioners' motion for a rehearing and for a vacation of the Tax Court judgment, together with the accompanying affidavits, and conclude that there was no abuse of discretion in the denial of such motions. True, it was represented that certain additional testimony would be available in behalf of petitioners on a rehearing, but no reason is discernible why such proof was not available at the original hearing.

Other questions raised by petitioners have been considered but do not merit discussion. We find no reason to reverse the decision of the Tax Court. It is, therefore,

Affirmed.