BETTIE JAYNE COFFMAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Coffman v. Commissioner
Docket No. 8605-71
United States Tax Court
T.C. Memo 1974-308; 1974 Tax Ct. Memo LEXIS 12; 33 T.C.M. (CCH) 1416; T.C.M. (RIA) 740308; December 12, 1974, Filed. John R. Taylor and John R. Shaw, for the petitioner. Charles N. Woodward, for the respondent. FAY
MEMORAMDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent has determined a deficiency in petitioner's Federal income tax for the calendar year 1969 in the amount of $100,130.04. Due to concessions by both parties the initial issue for decision is whether section 6013(e) of the Internal Revenue Code of 1954[1] provides petitioner, a resident of a community property state, with relief from tax liability where she and her husband filed separate tax returns for *13 the taxable year in question. If not, we must determine the following: (1) the fair market value of certain stock certificates issued to petitioner's spouse as compensation, and (2) whether certain monetary deposits made by petitioner's spouse into various bank accounts are includible in petitioner's gross income. FINDINGS OF FACT Certain facts have been stipulated and are so found. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioner, Bettie Jayne Coffman, resided in San Antonio, Texas, at the time of the filing of the petition in this case. Although petitioner was married to Robert Caran (Caran) during the calendar year 1969, she filed a separate Federal income tax return for said year with the district director of internal revenue at Austin, Texas. During 1969 petitioner and Caran separated. At this time they maintained separate residences and were subsequently divorced in March of 1970. For the calendar year 1969 Caran omitted from his separate income tax return an *14 amount in excess of 25 percent of his gross income. In signing her separate return, petitioner did not know of and had no reason to know of such income being omitted; nor did she substantially or significantly benefit, directly or indirectly, from the items omitted by Caran from gross income. On September 14, 1968, Caran entered into a contract with Harry J. Mosser (Mosser), which provided that Caran act as the agent for the sale of certain properties by Mosser to U.N. Industries, Inc. In consideration thereof Caran and three associates were to receive a commission of $200,000. The contract was consummated in the early part of 1969. Caran became entitled to $50,000 as his share of the commission and U.N. Industries, Inc., assumed the obligation of payments. He therefore received cash in the amount of $40,000 and, on January 28, 1969, 15,559 shares of common stock of U.N. Industries, Inc. These shares were not traded on an exchange nor registered under the Federal Securities Act of 1933. The stock also contained certain restrictions stamped on the face of the certificates. At sometime during 1969 Caran sold 4,559 shares of the said stock to Mrs. Annette Lewis with net proceeds *15 of $9,118. Caran made the following monetary deposits into the following bank accounts during 1969: Bank
Account Name
Amount
Corpus Christi Bank & Trust
Robert Caran
$8,396.98
Broadway National Bank
Robert Caran
562.34
Guarranty National Bank
Robert Caran
7,012.35
Broadway National Bank
Bettie Jayne Caran (now Coffman)
8,729.63
Guarranty National Bank
Mona Hughey
8,243.39
By statutory notice dated September 23, 1971, respondent determined that petitioner was liable for tax on a portion of the amounts omitted by Caran from his separate return. OPINION The initial issue presented is whether section 6013(e) relieves petitioner, a resident of a community property state, from tax liability where petitioner and her spouse filed separate tax returns. [2] We hold it does not. In Mary Lou Galliher, 62 T.C. [*] (1974), we held, under circumstances similar to those presented here, that a taxpayer could *16 not find relief from tax liability under the "innocent spouse" provision of section 6013(e) when separate returns were filed. For the same reason stated in Galliher we hold that since separate returns were filed by husband and wife in the matter before us, petitioner is not entitled to the protection afforded by section 6013(e). As a consequence of our holding, we must now determine the fair market value of 15,559 shares of stock received by Caran as compensation in 1969. See sec. 1.61-2(d) (1), Income Tax Regs. Part of petitioner's liability for tax extends to one-half the value of these shares. Christine K. Hill, 32 T.C. 254 (1959). It is petitioner's position that the value of the stock when received by Caran was $.70 per share. This is based upon Caran's being entitled to a commission of $50,000 and receiving $40,000 in cash and 15,559 shares of stock as the balance. [3] Respondent maintains that the value of the stock was $1.25 a share. [4] We believe both parties have misstated the stock's value. *17 Although the record is lacking on this issue, it is our view that Caran would have preferred his commission to be paid entirely in cash. He agreed, however, to accept stock as payment with some knowledge that the value of the shares exceeded the balance owed to him. Furthermore, we think it incredible that U.N. Industries, Inc., would pay a commission of 15,559 shares of stock, valued at $1.25 per share, when its obligation to Caran after payment of $40,000 in cash totalled only $10,000. Therefore, after due consideration of all factors pertinent to a determination, we hold the value of the stock when received by Caran to have been $1.00 per share. We finally must determine whether Caran had additional income evidenced by monetary deposits into various bank accounts. Respondent asserts that certain deposits made by Caran represent a newly taxable source. He contends that the total of such deposits are included in the income of Caran and petitioner unless the source of the deposits is revealed. Respondent is correct in his statement of the law. See Ruark v. Commissioner, 449 F.2d 311 (C.A. 9, 1971), affirming per curiam a Memorandum Opinion of this Court. Petitioner, *18 however, has, in our opinion, shown the monetary source of these deposits. After reviewing all of the facts and circumstances relevant to this issue we think it clear that the deposits into the various bank accounts represented the residue of an amount previously included as income to Caran and petitioner in the form of a commission from U.N. Industries, Inc. [5] Compare Truam v. Commissioner, 237 F.2d 277 (C.A. 7, 1956), affirming a Memorandum Opinion of this Court. Accordingly, we hold that these deposits do not represent additional income to Caran and petitioner. Decision will be entered under Rule 155. Footnotes
1. All section references are to the provisions of the Internal Revenue Code of 1954 in effect during the taxable year in issue. ↩
2. By virtue of the community property laws of the State of Texas, petitioner's gross income includes one-half the total income received by petitioner and Caran during 1969. Christine K. Hill, 32 T.C. 254↩ (1959). 3. Petitioner has attempted to bolster her position by introducing some evidence of fraud in the handling of certain sale of the stock. The record is meager in this regard. Accordingly, we decline to speculate as to what did happen and the effect of any possible fraud on the value of the shares in question. ↩
4. Respondent bases his contention on sales of the stock at $1.25 per share on dates subsequent to Caran's receipt of the sales. ↩
5. See Sam C. Evans, T.C. Memo. 1974-267↩.