ROY C. DERKSEN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Derksen v. Commissioner
Docket No. 26731-83.
United States Tax Court
T.C. Memo 1985-470; 1985 Tax Ct. Memo LEXIS 163; 50 T.C.M. (CCH) 1005; T.C.M. (RIA) 85470; September 9, 1985. Roy C. Derksen, pro se. Joseph R. Peters, for the respondent. SWIFT
MEMORANDUM FINDINGS OF FACT AND OPINION SWIFT, Judge: In a statutory notice of deficiency dated June 15, 1983, respondent determined the following deficiencies in, and additions to, petitioner's Federal income tax liabilities: Additions to Tax
Year
Deficiency
Section 6653(b) [1]
Section 6654(a)
1976
$260.00
$130.00
$9.68
1977
3,754.05
1,877.02
133.57
1978
6,458.51
3,229.26
206.17
1979
2,153.91
1,076.96
90.02
On May 1, 1984, respondent filed an amended answer asserting the following additions to tax if the section 6653(b) fraud additions are not sustained: Additions to Tax
Year
Section 6651(a)(1)
Section 6653(a)
1976
$65.00
$13.00
1977
938.51
187.70
1978
1,614.63
322.92
1979
538.48
107.69
*165 Trial in this case was held on May 18, 1984, in Milwaukee, Wisconsin. Some of the facts have been stipulated and are so found. The issues for decision are as follows: (1) Whether petitioner is taxable on unreported income during the years 1976 through 1979, and if so, the amount of unreported income taxable to him; (2) whether petitioner is liable for additions to tax under section 6653(b) or, in the alternative, under section 6651(a)(1) and section 6653(a); and (3) whether petitioner is liable for additions to tax under section 6654(a). FINDINGS OF FACT Petitioner Roy C. Derksen resided in Brandon, Wisconsin, when the petition herein was filed. Petitioner submitted to the Internal Revenue Service purported Federal income tax returns for the years 1976 and 1977 in which the only numerical information contained thereon was petitioner's address. On the purported tax returns petitioner made numerous Fifth Amendment objections, and he failed to report thereon any financial information from which his correct Federal income tax liability for 1976 and 1977 could be determined. [2] For 1978 and 1979, petitioner has not filed any documents even purporting to be his Federal income tax *166 returns. Respondent notified petitioner by mail that his 1976 and 1977 purported tax returns were unacceptable. Petitioner responded that beginning in 1976 he was no longer required to file Federal income tax returns in light of several Supreme Court decisions, which in his view stood for the proposition that compensation exchanged for labor did not represent taxable income. Petitioner was issued W-2 forms from his father, Clarence Derksen, for 1976 and 1977, in the respective amounts of $4,400 and $6,650. However, no Federal income taxes were withheld from those amounts. Petitioner was married in 1977. During 1978 and 1979, petitioner purchased, repaired, *167 and sold used farm machinery. In addition, petitioner operated a farm and sold corn. Petitioner's wife sold cosmetics. Beginning in 1977, petitioner and his wife maintained a joint checking account at the State Bank of Waupun, Wisconsin. Petitioner also maintained an individual savings account at the same bank. Petitioner refused to provide respondent's agents sufficient information concerning his income and expenses at the audit level. Accordingly, for 1976, respondent determined petitioner's income using the specific item method of proof; and for 1977, 1978, and 1979 respondent used the bank deposits method of proof. Respondent's agents obtained copies of petitioner's bank deposit slips and monthly bank statements from the State Bank of Waupun after issuance of an administrative summons. Respondent claims to have used deposit information contained on the monthly bank statements in making his computations of petitioner's gross income for 1977, 1978 and 1979. Respondent explains that he did not use copies of the individual deposit slips for his computations because the deposit slips were not legible. Respondent did not offer either the bank statements or the deposit slips *168 into evidence. [3]
OPINION Issue 1: Unreported Income
Petitioner makes various arguments that wages are not income, that he was a "disenfranchized free natural person" and therefore is not required to file tax returns or pay taxes, and that this Court lacks jurisdiction to determine petitioner's Federal income tax liabilities. Those arguments are frivolous and without any basis in fact or law and merit no further discussion. Abrams v. Commissioner,82 T.C. 403 (1984); Rowlee v. Commissioner,80 T.C. 1111 (1983), dismissed on appeal (2d Cir. 1984). The income adjustment made by respondent for 1976 was based upon the W-2 statement prepared by petitioner's father reflecting wages paid to petitioner. Petitioner has submitted no *169 evidence to refute the amount shown on the W-2 statement, and we sustain respondent's determination for 1976. As stated earlier, for 1977 through 1979 respondent's determinations of petitioner's gross income were based on the bank deposits method of proof, necessitated by petitioner's failure to cooperate with respondent's agents during the audit. The bank deposits method of reconstructing income encompasses a certain degree of uncertainty. Traum v. Commissioner,237 F.2d 277, 280 (7th Cir. 1956), affg. a Memorandum Opinion of this Court. Nevertheless, that method has been accepted by this and other Courts. See, e.g., Marcello v. Commissioner,380 F.2d 509, 511 (5th Cir. 1967), affg. a Memorandum Opinion of this Court; Doll v. Glenn,231 F.2d 186, 188 (6th Cir. 1956); United States v. Doyle,234 F.2d 788, 793 (7th Cir. 1956); Harper v. Commissioner,54 T.C. 1121, 1129 (1970); Romer v. Commissioner,28 T.C. 1228, 1243-1244 (1957). Determinations made by respondent in his statutory notice of deficiency are presumptively correct, and petitioner has the burden of proving otherwise. *170 Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). The mere fact that various adjustments or corrections are made to respondent's notice of deficiency does not eliminate the presumption of correctness associated with the notice, and it does not relieve petitioner of his burden of proof. With one minor exception, petitioner has presented no bank statements or other evidence that affirmatively refute the computations of taxable income made by respondent. At trial, respondent requested petitioner to read into the record a statement of petitioner's wife to the effect that in 1977 she made two deposits from her separate income into the joint bank account. Respondent has removed those two items (totaling $2,500) from petitioner's 1977 income. Petitioner's proof consists primarily of his testimony that some additional deposits could have been made by people other than himself. Petitioner also complains that the bank deposit slips respondent obtained from the bank were illegible, making it impossible to confirm that petitioner actually made the deposits. Again, we emphasize that petitioner has the burden to establish that respondent improperly computed the deposits *171 into the bank accounts and also to establish which of the deposits that were made to the bank accounts did not constitute his income. Because of petitioner's failure to establish that any of the gross receipts utilized in respondent's calculations--other than the $2,500 attributable to his wife--did not constitute income taxable to him, we sustain respondent's determination of the tax deficiencies for each of the years 1977, 1978 and 1979. Fraud Addition
The next issue for decision is whether respondent's determination of additions to tax under section 6653(b) (the civil fraud addition) should be sustained. Section 6653(b) provides that an addition to tax of 50 percent of an underpayment of tax will be sustained if any part of the underpayment was due to fraud. Respondent bears the burden of proving by clear and convincing evidence for each year in issue that (1) there was an underpayment of tax and (2) that some portion of the underpayment was due to fraud. Section 7454(a); Plunkett v. Commissioner,465 F.2d 299, 303 (7th Cir. 1972), affg. a Memorandum Opinion of this Court; Gromacki v. Commissioner,361 F.2d 727 (7th Cir. 1966), affg. *172 a Memorandum Opinion of this Court; Rule 142(b). In satisfying his burden of proof, respondent need only prove that some part of the underpayment for each of the years in question was due to fraud with intent to evade taxes. Otsuki v. Commissioner,53 T.C. 96, 105 (1969); Shaw v. Commissioner,27 T.C. 561, 570 (1956), affd. 252 F.2d 681 (6th Cir. 1958). The existence of fraud is to be determined from all of the surrounding facts and circumstances. Gajewski v. Commissioner,67 T.C. 181, 199 (1976), affd. without published opinion, 578 F.2d 1383 (8th Cir. 1978); Stratton v. Commissioner,54 T.C. 255, 284 (1970). The intent to commit fraud has been described as "the specific purpose to evade a tax believed to be owing". Webb v. Commissioner,394 F.2d 366, 377 (5th Cir. 1968), affg. a Memorandum Opinion of this Court. This intent is to be determined at the time the tax return was filed. Fox v. Commissioner,61 T.C. 704, 717 (1974). Failure to file returns in itself does not establish fraud, although it is one factor to be considered. Grosshandler v. Commissioner,75 T.C. 1, 19 (1980). *173 The consistent understatement of substantial amounts of income over several years is strong evidence of fraud. Davis v. Commissioner,239 F.2d 187, 191 (7th Cir. 1956), affg. a Memorandum Opinion of this Court; Vannaman v. Commissioner,54 T.C. 1011, 1018 (1970). Any conduct which is likely to mislead or conceal is indicative of fraud, Spies v. United States,317 U.S. 492, 499 (1943), including the failure to keep adequate books and records. Papineau v. Commissioner,28 T.C. 54, 58 (1957). The evidence in this case on this issue is unusual. That petitioner had the subjective intent to defraud the government with respect to his 1976 through 1979 Federal income tax liabilities is clear from the evidence. Petitioner's filing of tax protestor "returns" for 1976 and 1977, petitioner's failure to file any returns for 1978 and 1979, his maintenance of frivolous arguments in support of his failure to file proper returns, petitioner's obvious intelligence, and his failure to maintain adequate books and records, conclusively establish petitioner's fraudulent intent. However, respondent has completely failed herein to *174 meet his burden of establishing the second prong of civil tax fraud under section 6653(b)--namely, to prove an underpayment of tax--for the years 1977, 1978 and 1979. The fact that we have found for respondent on the underlying tax deficiencies herein due to petitioner's failure to satisfy his burden of proof with respect thereto does not relieve respondent of the burden placed upon him to prove both elements of civil tax fraud. Numerous cases have held that respondent can not bootstrap a determination of fraud upon a taxpayer's failure to carry his burden of proof with respect to the underlying tax deficiencies. George v. Commissioner,338 F.2d 221, 223 (1st Cir. 1964); Drieborg v. Commissioner,225 F.2d 216, 218 (6th Cir. 1955); Estate of Beck v. Commissioner,56 T.C. 297, 363 (1971); Otsuki v. Commissioner, supra,53 T.C. at 106. Where respondent fails to establish that there was unreported income and to establish an underpayment of Federal income taxes resulting therefrom, respondent's determination of civil tax fraud will not be sustained. Fairchild v. United States,240 F.2d 944 (5th Cir. 1957); *175 Olinger v. Commissioner,234 F.2d 823 (5th Cir. 1956). In this case, respondent's deficiencies for 1977, 1978, and 1979 were based entirely on bank deposits petitioner allegedly made into his savings and checking accounts. Respondent improperly assumed the checking account was petitioner's individual account when in fact it was a joint account of petitioner and his wife. Petitioner established that some significant deposits were made by his wife into the joint checking account, and respondent did not offer into evidence the bank deposit slips nor the monthly bank statements for either of the accounts. The explanation given by respondent for not offering the deposit slips into evidence was that the copies thereof in respondent's possession were illegible. No explanation was given as to why respondent did not subpoena the original deposit slips from the bank, and no explanation was given as to why the monthly bank statements, which respondent apparently had in his possession at trial, were not offered into evidence. The only evidence in the record that even approaches support for respondent's determinations of gross income for the years 1977, 1978 and 1979, is *176 a statement in the stipulation of facts. Paragraphs 11 and 12 of the stipulation provide as follows: 11. Schedule 2 on page 2 of the statutory notice of deficiency shows the computation of business income for 1977, 1978 and 1979 as computed by Revenue Agent Richard Siebenaller. 12. The items in Schedule 2 of the statutory notice of deficiency are more fully explained in the Internal Revenue agent's workpapers a portion of which are attached hereto as Exhibit H. Respondent apparently believes that the above stipulation, in which it is simply agreed that a revenue agent made a "computation of business income," is affirmative evidence of what petitioner's business income actually was. We attach no such weight to a revenue agent's computations, particularly where the relevant underlying records on which the computations were based are not in evidence. Petitioner did not stipulate that revenue agent Siebenaller's computations correctly reflect his business income, and it was therefore incumbent upon respondent to submit some admissible and persuasive evidence that verified and gave credibility to those computations. This case is somewhat similar to the facts of *177 Fairchild v. Commissioner,supra, wherein the only evidence submitted to prove the underpayment of tax in a civil fraud case was respondent's own calculations. The Fifth Circuit's brief comment therein is apropos to the evidence relied on by respondent herein-- No attempt was made to establish the correctness of its "net worth statements * * *." [240 F.2d at 947]. Based upon our analysis of the evidence, respondent has completely failed in his burden to prove that there existed an underpayment of tax for the years 1977, 1978 and 1979.For those years, the inadequate stipulation of facts and the absence of the bank records in evidence, make it impossible for us to evaluate the correctness of respondent's calculations of petitioner's gross income based upon the bank deposits method of proof. The following quotation approximates our sentiments concerning respondent's evidence on this issue for the years 1977, 1978 and 1979: while petitioner's proof is sketchy and unsatisfactory, indeed wholly insufficient, in support of her attack upon the deficiencies, the commissioner's proof on the issues upon which he carries the burden is no better. * * * While *178 it is true that the taxpayer's proof and attitude * * * was not satisfactory, this did not supply the deficiencies in the commissioner's proof, which, despite his contention here to the contrary, consisted of little more than the fact that he had determined the deficiency claimed. The case on the issues where the burden was on the commissioner was presented and tried too much on the theory, "Give a dog an ill name and hang him." [Olinger v. Commissioner,supra,234 F.2d at 824.] With respect to 1976, the $260 income tax deficiency (which is based upon the W-2 income of $4,400) ordinarily might be too small on which to base a finding of fraud in one isolated year. However, in this case we have already found that petitioner had the requisite fraudulent intent in each of the years in issue. It was only respondent's failure to prove the existence of tax underpayments in 1977, 1978 and 1979, that precluded us from sustaining the fraud additions to tax for those years. For 1976, the W-2 statement in evidence in the amount of $4,400 establishes that petitioner earned at least that amount of income in that year, which gives rise to the $260 tax underpayment. Both *179 elements of civil fraud having been established by respondent for 1976, we sustain respondent's determination of the addition to tax under section 6653(b) for that year. [4]
NEGLIGENCE ADDITION
Respondent alternatively argues with respect to 1977, 1978 and 1979 (i.e. the years in which we do not sustain the fraud addition to tax) that petitioner is liable for the negligence addition to tax under section 6653(a). That section provides for an addition to tax if any part of an underpayment of taxes resulted from negligence or intentional disregard of the rules and regulations. The burden of proof with respect to this issue is placed on respondent since it is a new issue raised in his answer. Turner v. Commissioner,68 T.C. 48, 50 (1977); Rule 142(a). Respondent's failure to establish an underpayment of income taxes by petitioner for 1977, 1978 and 1979, as previously discussed *180 herein, is fatal to respondent's determination of the section 6653(a) addition to tax for those years. FAILURE TO FILE ADDITION
Respondent also argues in the alternative with respect to 1977, 1978 and 1979 (i.e. the years in which we do not sustain the fraud addition to tax) that petitioner is liable for the addition to tax for failure to file tax returns under section 6651(a)(1). Under that section an addition to tax may be determined for failure to file a timely Federal income tax return unless the late filing of the return is due to reasonable cause. The addition to tax under section 6651(a)(1) is not dependent upon an underpayment of tax but rather on the receipt by a taxpayer of gross income in any one year in excess of specified dollar amounts. [5] The addition under section 6651(a)(1) is computed on the amount required to be shown as tax on the return reduced by the amount of any part of the tax which is paid on or before the date prescribed for payment of the tax. The burden of proof with respect to this issue is also on respondent since it is a new issue raised in his answer. Turner v. Commissioner,68 T.C. 48, 50 (1977); Rule 142(a).
*181 Petitioner filed a so-called "Fifth Amendment return" for 1977. Such a document does not constitute a valid Federal income tax return because it contains no information relating to the petitioner's income and deductions. United States v. Moore,627 F.2d 830, 835 (7th Cir. 1980); Beard v. Commissioner,82 T.C. 766, 779 (1984); Hatfield v. Commissioner,68 T.C. 895, 898 (1977). Respondent has established through the W-2 statement that petitioner had gross income in an amount (namely, $6,650) which required a Federal income tax return to be filed by him for 1977. Petitioner has not offered any credible explanation for not filing a Federal income tax return for 1977, and we therefore sustain respondent's determination of the addition to tax for failure to file a return for 1977. With respect to 1978 and 1979, respondent has failed to meet his burden of proof herein to establish that petitioner earned gross income in those years in any amount, let alone amounts that would have required him to file Federal income tax returns for those years. We hold for petitioner with regard to this issue for 1978 and 1979. Underpayment *182 of Estimated Tax
The last issue for our consideration is the applicability of the addition to tax under section 6654 for underpayment of estimated taxes. Petitioner bears the burden of proof on this issue for each of the years in dispute. Hollman v. Commissioner,38 T.C. 251, 263 (1962). The addition to tax under section 6654(a) is mandatory unless petitioner can demonstrate that he comes within one of the computational exceptions of section 6654(d), Grosshandler v. Commissioner,75 T.C. 1, 20-21 (1980). Petitioner did not have any Federal income taxes withheld from the wages he earned from Clarence Derksen, nor did he make any estimated tax payments with respect to his income. Petitioner has presented no evidence on this issue, and in light of petitioners burden of proof, we sustain respondent's determination of the additions to tax under section 6654 for each of the years 1976, 1977, 1978 and 1979. In light of the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect during the years in issue, and all rule references are to the Tax Court Rules of Practice and Procedure.↩
2. In the left-hand margin of petitioner's 1976 and 1977 "tax returns" petitioner wrote the following: "I offer to amend or file again if you can show me how to do so without waiving my constitutional rights, especially my 4th and 5th Amendment rights." In addition, at the bottom of the returns petitioner wrote as follows: "I DO NOT UNDERSTAND THIS RETURN NOR THE LAWS THAT MAY APPLY TO ME. This means that I take specific objection under the 4th or 5th Amendment to the U.S. Constitution↩ to the specific question."
3. At the conclusion of the trial the following dialogue occurred between the Court and respondent's attorney: THE COURT: Did we stipulate the deposit statements, Mr. Peters? MR. PETERS: No, Your Honor. THE COURT: Why not? MR. PETERS: We didn't feel it was necessary. No explanation was given at the trial or in respondent's brief as to why the monthly bank statements were not offered into evidence.↩
4. A W-2 form for 1977, reflecting wage income of $6,650, is in evidence. However, respondent has relied solely on the bank deposits method of proof and has submitted no determination of a tax deficiency or underpayment of tax based upon unreported wage income for that year.↩
5. Section 6012(a)(1)(A), in general and as in effect in 1977, 1978 and 1979, required an income tax return to be filed by a married taxpayer if he had gross income when combined with the income of his spouse in each of the years of at least $4,700 for 1977, $5,400 for 1978, and $5,400 for 1979.↩