EUGENE B. HEBER AND MARLENE R. HEBER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Heber v. Commissioner
Docket No. 35218-86.
United States Tax Court
T.C. Memo 1989-85; 1989 Tax Ct. Memo LEXIS 89; 56 T.C.M. (CCH) 1361; T.C.M. (RIA) 89085; February 27, 1989. Eugene B. Heber and Marlene R. Heber, pro se. Benjamin A. de Luna, David J. Mungo, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, *90 Judge: Respondent determined deficiencies in petitioners' income tax and additions to tax for the years and in the amounts as follows: Additions to Tax
Section
Section
Section
Section
Year ended
Income Tax
6651(a)(1) *[1]
6653(a)(1)
6653(a)(2)
6661
12/31/81
$ 50,771.10
$ 12,562.35
$ 2,550.46
*
0
12/31/82
$ 11,149.81
$  1,114.98
$   557.49
*
$ 1,114.98
Some of the issues raised by the pleadings have been disposed of by agreement of the parties, leaving for our decision the following: (1) Whether respondent was justified in reconstructing petitioners' income for each of the taxable years 1981 and 1982 by using the bank deposit method, and, if so, did respondent exclude all nontaxable items; (2) the proper amount of the distributable income *91 reportable by petitioners from the Heber-Campbell Corporation (HC Corp.) under section 1373 of the Internal Revenue Code for each of the taxable years 1981 and 1982; (3) whether petitioners are entitled to deduct as a capital loss under section 165(f) for the year 1981 an amount of $ 13,500 for business furniture and fixtures, and for 1982 an amount of $ 90,000 for HC Corp. stock, and $ 12,000 because of the execution of a judgment against them; (4) whether petitioners are liable for additions to tax under section 6651(a)(1) in each of the years 1981 and 1982 for failure to timely file their Federal income tax return; (5) whether petitioners are liable for additions to tax under section 6653(a)(1) and section 6653(a)(2) for each of the years 1981 and 1982 because of underpayments of tax being due to negligence or intentional disregard of rules and regulations; and (6) whether petitioners are liable for additions to tax under section 6661(a) for the taxable year 1982 by reason of having substantially understated their income for that taxable year. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners, husband and *92 wife, resided in Colorado at the time their petition in this case was filed. They filed joint Federal income tax returns for the calendar years 1981 and 1982 with the Internal Revenue Service Center in Ogden, Utah on June 2, 1983. Marlene B. Heber during the years here in issue at times used the name Marlene B. Hilderman which had been her name prior to her marriage to Eugene B. Heber (petitioner). During the years 1981 and 1982, HC Corp. was a Subchapter S corporation owned entirely by petitioner. HC Corp. operated a tavern known as the "House of Draught" during the year 1981 until late August or early September of that year. Although the House of Draught bar was not operated after September 1981, the corporation remained in business until early 1982. The House of Draught sold 3.2 beer and food items such as pizzas primarily to a clientele who ranged in age from 18 to the early 20s. The police department and other departments of the city of Denver had made a number of complaints with respect to the bar, and petitioners had attempted to remedy the items complained about, but the bar was finally closed by the city in late August or early September 1981. The bar was never reopened *93 after the date of its closing. On June 2, 1983, petitioner filed on behalf of HC Corp. a Form 1120S return on which gross receipts of $ 68,791 were reported. The return showed cost of goods sold of $ 41,274 with a gross profit of $ 27,517. After taking other deductions, the return reported a loss of $ 3,895. On June 17, 1983, petitioner on behalf of HC Corp. filed a return on Form 1120S for the year 1982 reporting gross receipts of $ 2,600 with no expenses shown and a taxable income of $ 2,600. This return showed that the corporation was in business for one month in 1982. Petitioner was in charge of the maintenance of the books and records of HC Corp. during 1981 and 1982. At some time when the books of HC Corp. were stored in the basement of the building in which the bar had been operated, a flood occurred that caused the books to become waterlogged and petitioner disposed of them. Petitioner from time to time made withdrawals from HC Corp. He had in years prior to 1981 generally withdrawn $ 1,000 to $ 1,500 a month from HC Corp. and he continued during at least part of 1981 to withdraw approximately $ 1,000 a month from HC Corp.
There were a number of coin-operated *94 machines located on the premises of HC Corp. These included cigarette vending machines, pinball machines and similar machines. From time to time, starting as early as 1970, when petitioner would take the coins out of these machines, he would save some of them and take them to his home where he kept them in bags. At the beginning of 1981 petitioner had in his home several bags of coins he had taken from vending machines on the premises of HC Corp. During 1981, petitioner took some of these coins in packets to the bank and exchanged them for bills. Some of the bills obtained from these coins were deposited by petitioners in their various bank accounts. The banks gave petitioners some notices of shortages in the coins received as compared to the amounts stated to be contained in the packets. Statements dated March 11, 12 and 13, 1981, showed small shortages in rolls that purported to be $ 1,000 worth of coins. One shortage was shown to be $ 4.05, one $ 3.25, one $ 1.50, and one $ 1.00. On March 13, 1981, petitioner's account was charged $ 5.00 for a coin-running charge at $ 5.00 per $ 1,000. HC Corp. purchased beer from Anheuser-Busch, Inc., in 1981. Delivery records of beer *95 from Anheuser-Busch, Inc., to HC Corp. in 1981 showed amounts delivered to HC Corp., which when multiplied by the price charged to HC Corp. for the beer, resulted in costs of the beer of $ 31,306. Of the $ 31,306 of beer purchased by HC Corp. from Anheuser-Busch, Inc., $ 23,535.52 was paid by checks drawn on HC Corp. No checks were drawn on HC Corp.'s bank account payable to the company from which that corporation purchased pizzas. During the year 1981, deposits in the amount of $ 56,559.25 were made to the corporate checking account of HC Corp. Only one check drawn on the account in 1981 was made out to cash. The remainder of the checks drawn on that account were made out to stated companies or individuals. HC Corp. on its tax returns for 1978, 1979 and 1980 claimed depreciation deductions but no depreciation deduction was claimed on the 1982 return. A depreciation deduction of $ 6,041 was claimed on the 1981 return of HC Corp.HC Corp. owned certain furniture and fixtures used in the operation of its bar in 1981. A portion of the furniture and fixtures was sold in late 1981 by the City in connection with a claimed deficiency in tax payments. In 1981 HC Corp. received $ *96 2,600 as a down payment on a contract of sale of HC Corp. stock or assets. The sale was never completed due to the default of the purchaser. HC Corp. retained the $ 2,600 down payment. During 1981 and 1982 petitioner operated a bookmaking business in which he accepted wagers on sporting events. Most of the wagers were made with respect to professional football games, including play-off games and the superbowl game. In December, 1982, Mrs. Heber was stopped in her automobile by the police. Her car was searched and betting tickets and cash of approximately $ 800 were found under a floor mat of the car. Mrs. Heber at times delivered wagering tickets for petitioner or delivered cash to winning ticket holders for petitioner. Mrs. Heber was arrested when her car was stopped and the wagering tickets and cash were found. Later in the day petitioner's home was searched. Wagering tickets were found in the home. Several bags of coins were found in the home and some cash was found in the safe there. In addition to operating the wagering business, petitioner and Mrs. Heber both gambled at the dog racing track and at Las Vegas. In each of the years 1981 and 1982, petitioners had winnings *97 from their personal gambling. Petitioner kept no books and records of his bookmaking business and neither petitioner kept records of their gambling winnings, although some of the winnings were sufficient that the amount was reported by the track or other gambling establishments to the Internal Revenue Service. In 1981 petitioner entered into a contract with the First National Bank of Westminster for the purchase of furniture and fixtures of a tavern in Westminster, Colorado. Petitioner paid $ 13,438.04 under the contract to the First National Bank of Westminster. The sale was not completed because of the initiation of a lawsuit by another prospective purchaser. The First National Bank of Westminster offered petitioner a full refund of the money paid by him under the contract. Petitioner did not accept the refund since he was attempting to obtain from the bank a full refund of all amounts expended by him in connection with the proposed purchase of the tavern's furniture and fixtures. Petitioner filed a cross-claim in the civil action involving the purchase of the furniture and fixtures. This action was still pending at the end of 1981. In a subsequent year, petitioner settled *98 this lawsuit by accepting a payment from the bank of $ 21,000. When HC Corp. was initially formed petitioner was not the sole stockholder, but part of the stock was owned by a person by the name of Barbara Campbell. At some time during 1976 or 1977 petitioner acquired the HC Corp. stock owned by Barbara Campbell. Some time in 1973 petitioner sold a business known as the Stardust Lounge to an individual named Beverly J. Carmen. The agreed sales price was $ 75,000. Petitioner had paid $ 55,000 for the Lounge. Petitioner accepted Ms. Carmen's note for part of the purchase price. Ms. Carmen ceased to make payments on the note and petitioner began a foreclosure action. Ms. Carmen had made a sale of the Stardust Lounge to an individual named Sauterilli. Petitioner attended a council meeting of the City of Denver concerning the transfer of the liquor license of the Stardust Lounge to Sauterilli and reported that he had the Stardust Lounge under foreclosure. Ms. Carmen sued him in connection with his action in that regard and got a judgment against him for $ 25,000. In 1981, there remained unpaid on the judgment approximately $ 12,000. In connection with that judgment, a note *99 with a remaining amount due of between $ 10,000 and $ 20,000 that petitioner had taken from the party to who the bar was resold, was seized. Respondent in his notice of deficiency increased petitioner's reported income by $ 51,614.48 for the year 1981 based on bank deposits less nontaxable deposits, less gross income reported on the return, and for 1982 increased petitioner's reported taxable income by $ 8,425.88 computed in the same manner. The following shows the computation of total bank deposits less nontaxable deposits set forth by respondent in the notice of deficiency: 1981
1982
Total Deposits:
Littleton First Industrial
$  21,620.00 $     -- World Savings
34,257.31 50,038.00 Greenwood Industrial
32,328.00 34,253.46 East National
26,530.60 3,029.03 United Bank - Arapahoe
4,640.25 27,422.34 Total Deposits
$ 119,376.16 $ 114,742.83 Less Non-Taxable Deposits:
World Savings
(   30,000.00)
(   24,901.32)
East National
(    6,169.68)
--
United Bank - Arapahoe
(    1,927.00)
(    8,903.17)
Greenwood Industrial
--
(   34,253.46)
Total Taxable Deposits
$  81,279.48 $  46,684.88 Gross Income Per Return
(   29,665.00)
(   38,259.00)
$  51,614.48 $   8,425.88 *100 In 1981 respondent in addition increased petitioner's reported gross income by $ 2,820 for specific gambling winnings not deposited making total adjustments to gross income in that year of $ 54,434.48 without reference to income from HC Corp.
Respondent in the notice of deficiency computed the amount chargeable as income to petitioner from HC Corp. to be $ 38,917 for 1981 and a negative amount of $ 1,482 for 1982. These amounts were computed by respondent as follows: 1981
1982
Taxable Income Per Form 1120S
($  3,895.00)
$ 2,600.00 Adjustments:
Gross Income
--
900.00 Business Expenses
32,876.00 (  2,382.00)
Depreciation
6,041.00 --
Corrected Taxable Income
$ 35,022.00 $ 1,118.00 Your Ownership Interest
100% 100% Your Corrected Share
$ 35,022.00 $ 1,118.00 Amount Reported
(   3,895.00)
2,600.00 Adjustment
$ 38,917.00 ($ 1,482.00)
Respondent also disallowed the loss of $ 13,500 claimed by petitioner in 1981 on the sale of business property and the $ 90,000 loss and $ 12,000 loss claimed in 1982 on HC Corp. stock and seizure of a note, respectively. The *101 various adjustments, some of which have now been disposed of by the parties, resulted in revised taxable income of petitioner for 1981 of $ 111,453.48 and for 1982, $ 41,057.88. Among the adjustments claimed by petitioner was a deduction for mortgage interest and real estate taxes for the year 1982 which respondent on brief has conceded as properly deductible in the amounts of $ 4,714 and $ 2,178, respectively. Petitioner contends that respondent has not adjusted his deposits by all nontaxable deposits, has not allowed all deductions to petitioners and HC Corp. which are properly allowable and has not allowed as capital losses amounts petitioner improperly claimed as ordinary losses. OPINION Petitioners first take the position that respondent was not justified in computing their income on the bank deposits method. The record here shows that petitioner kept no books with respect to his wagering business and not books with respect to personal gambling winnings. It has long been settled that where a taxpayer has no records or inadequate records, respondent is entitled to use other reasonable *102 methods of determining his income. Holland v. United States,348 U.S. 121 (1954). The bank deposits method has been recognized as a reasonable method to be used in computing a taxpayer's income. Traum v. Commissioner,237 F.2d 277 (7th Cir. 1956) affg. a Memorandum Opinion of this Court; Cupp v. Commissioner,65 T.C. 68, 82 (1975), affd. without opinion 559 F.2d 1207 (3d Cir. 1977); Romer v. Commissioner,28 T.C. 1228, 1244 (1957). The record here shows that petitioner kept no books whatsoever with respect to his wagering business or personal gambling activities. At one time he did keep books with respect to HC Corp. but these books had been destroyed and were not available at the time respondent was investigating petitioner's tax liability for 1981 and 1982. Under the facts here present, it is clear that respondent properly used the bank deposits method to compute petitioner's taxable income. When respondent has used a proper method of computation of taxable income, the determination that is made in *103 the notice of deficiency is presumptively correct and it is incumbent upon petitioner to show error in that determination. In the instant case petitioner claims a number of errors on the part of respondent. In connection with the computation of petitioners' income on the bank deposits method, it is petitioners' position that no all nontaxable items were excluded by respondent. Petitioner makes a number of general arguments in regard to deposits made in 1981. Petitioner argues that most of his wagering income would have been received in the fall of the year and, therefore, was not a likely source for large deposits in the early months of the year. Petitioner, however, overlooks the fact that the record shows that wagering on the superbowl professional football game in the beginning of each year produced substantial income for petitioner. Also, there is no showing as to what periods in the year petitioner had income from personal gambling activities. Although most of petitioner's wagering was on professional football games, he did have wagering income from other professional athletic events. Considering the facts in this record, we conclude that petitioner has not shown that *104 amounts of deposits in the early months of each of the years here in issue were from nontaxable sources. Petitioner makes some argument with respect to a check made out to Mrs. Heber being a nontaxable source of income. The record is totally deficient to support petitioner's contention that the check made out to Mrs. Heber was nontaxable income. Mrs. Heber's testimony was that she did not know and could not remember what the check was for. Finally petitioner argues that some of the deposits made in 1981 had their origin in coins, primarily quarters, that petitioner had collected in bags and kept in his home starting in approximately 1970. Although the record is not unmistakably clear that the bills received for quarters turned in at the bank were deposited, there is testimony by petitioners that there were deposits made with these bills and the bank statements do show deposits around the time that the bank apparently counted some of petitioner's coins to give petitioner bills for the coins. Weighing all the evidence, we conclude that petitioner has established that there were some deposits in their bank account in 1981, which had their origin in coins which petitioner had on *105 hand at the beginning of that year. Considering the evidence and using our best judgment based to an appreciable extent on the memoranda from the bank produced by petitioner, we conclude that $ 5,000 of petitioner's bank deposits in 1981 were made with funds received from coins accumulated by petitioner prior to 1981. Therefore, this $ 5,000 was not taxable income to petitioner in 1981 and the bank deposits should have been reduced by this $ 5,000 prior to computing petitioner's taxable income on the bank deposits method. We have examined all the other items deposited which petitioner claims may not have constituted taxable income and have found no other items aside from those allowed by respondent. We therefore sustain respondent's computation of the taxable income petitioner received from bank deposits in 1981 and 1982, except for the $ 5,000 adjustment in 1981. Petitioner makes a number of contentions as to why the amount determined by respondent to be includable in his income for 1981 and 1982 from earnings of HC Corp. is overstated. For the year 1981, petitioner does not question the amount of gross receipts of HC Corp. determined by respondent. In fact respondent used *106 the gross receipts as shown on the return filed on behalf of HC Corp. by petitioner since that amount exceeded the deposits into HC Corp.'s bank account by approximately $ 12,000. Petitioner does question the deductions allowed. Petitioner had claimed deductions of $ 66,785 and respondent disallowed $ 32,876 of these claimed deductions on the ground that no amount in excess of $ 33,909 had been established. Petitioner's major arguments with respect to the deductions disallowed by respondent for HC Corp. concern cost of goods sold and depreciation. Petitioner points out that no amounts were included in respondent's computation of costs of goods sold for pizza purchases. He testified that the reason for this was that all of those purchases were paid for by cash and not check. Petitioner further points out that HC Corp. received beer from Anheuser-Busch, Inc., in 1981 which had a cost of $ 31,306, but respondent only allowed deductions for the purchases of beer made by checks which amounted to $ 23,535.52. In our view, the record is clear that the difference in the $ 31,306 of beer which petitioner purchased from Anheuser-Busch, Inc., and the $ 23,535.52 paid to Anheuser-Busch, *107 Inc., on behalf of HC Corp. by checks constituted payments for beer made by cash. We therefore conclude that the difference in these two figures of $ 7,770.48 should be an additional deduction for cost of goods sold by petitioner in the year 1981. Respondent recognizes that petitioner purchased beer in excess of the amount he allowed as a deduction for beer purchases in the notice of deficiency, but argues that petitioner has not shown that the cash with which the beer was purchased was included in the gross receipts of HC Corp. However, petitioner has not attacked the gross receipts used by respondent and weighing the evidence as a whole, we conclude that petitioner has properly shown an increase in cost of goods sold by $ 7,770.48 for beer paid for in cash. Petitioner argues that payments in cash on behalf of HC Corp. were also made to companies from which HC Corp. purchased food items, particularly pizzas. The testimony of all the witnesses familiar with the House of Draught shows that pizzas were sold at the House of Draught. The record shows that no checks were written to suppliers of pizzas to HC Corp. It is, therefore, clear that some amount in cash was paid by HC Corp. *108 for pizzas bought for sale at the House of Draught. The difficulty here is that petitioner has failed to show the amount of such purchases. The record also shows that petitioner did make withdrawals from HC Corp. during the year 1981 for personal use. Only one check of HC Corp. is written to cash. It would follow that some withdrawals from HC Corp. by petitioner must have been cash withdrawals. The problem here is that having used the bank deposits method of computing petitioner's personal income, the record does not show to what extent the withdrawals petitioner made from HC Corp. in cash were deposited to his personal bank accounts. Petitioner argues that the approximate $ 12,000 excess in the amount reported as income of HC Corp. on its return over the approximate $ 56,000 of checks deposited to HC Corp.'s bank account was for cash payments for items sold. The only information in the record with respect to what may have been paid by cash is set forth in a computation made by the investigating revenue agent. This computation shows that of the claimed expenditures (not including depreciation) of $ 66,785 shown on the return for HC Corp. for 1981, the amount of $ 56,236 was *109 shown as paid by check and $ 10,549 by cash. For various reasons not here pertinent, part of the claimed deductions for expenses paid by check were disallowed. However, the amount of the expenses claimed on the return not included in checks written on behalf of HC Corp. of $ 10,549 gives some indication of the amount that might have been spent in cash for beer and food items such as pizza. Using this as a guide and having concluded that over $ 7,700 of beer purchases from Anheuser-Busch, Inc., were paid by cash, we conclude that HC Corp. is entitled to an additional deduction for cost of items sold of $ 2,750 for cash payment for food items in 1981. We recognize that the record does not support a precise determination of the amounts of cash paid for food items by HC Corp. in 1981 and, therefore, have made our determination of the amount weighing heavily against petitioner for this lack of preciseness. The next item which petitioner claims to be deductible is depreciation in the amount of $ 6,041. HC Corp. claimed this deduction on its return and it was disallowed by respondent as unsubstantiated. Petitioner has totally failed to show that any depreciable items which HC Corp. *110 owned in 1981 were not fully depreciated at the beginning of that year. Petitioner's only evidence with respect to the claimed depreciation was the Form 1120S returns filed by HC Corp. for 1978, 1979 and 1980 on which depreciation was claimed. There is nothing to show on these returns the basis of the claim for depreciation, just as there is nothing to show the basis of the claimed depreciation deductions on the 1981 return. Respondent's examining revenue agent testified at the trial that the depreciation deduction claimed by petitioner for 1980 was disallowed by respondent. The record is totally inadequate to establish that petitioner is entitled to any deduction for depreciation for the year 1981. The next item petitioner contests is the $ 2,600 reported as income of HC Corp. for 1982. From the record it appears that this item was the $ 2,600 that was deposited with HC Corp. by a prospective purchaser of either stock or furniture and fixtures in 1981 and forfeited to HC Corp. in 1982 when the sale was not consummated. If in fact the $ 2,600 is such a forfeiture item, it was properly reported as ordinary income in 1982. If the $ 2,600 was not an amount forfeited in connection *111 with an uncompleted sale of stock or furniture and fixtures, the record fails to show what the item is for and, therefore, respondent's considering this amount to be income of HC Corp. in 1982 is sustained. Petitioner claims a capital loss in 1981 resulting from $ 13,500 that he paid under a contract with First National Bank of Westminster for the purchase of furniture and fixtures of a tavern in Westminster, Colorado. The exact amount paid was $ 13,438.04. However, the record is clear that the amount paid in 1981 by petitioner had been offered back to petitioner by the bank in 1981, but had not been accepted by petitioner since petitioner was seeking a greater amount. At the end of 1981, there was no loss connected with the payment of the $ 13,438.04 to the First National Bank of Westminster. In fact the record shows that in some later year petitioner actually recovered $ 21,000 in connection with this transaction. Petitioner claims a $ 90,000 loss on HC Corp. stock for the year 1982. Although it is clear that the House of Draught ceased operating the bar in 1981 and ceased all operations after the first month of 1982, there is nothing in the record to show that the HC Corp. *112 stock was valueless in 1982. The record does not show what assets, if any, HC Corp. would have had left and whether or not there was goodwill connected to the corporation. Also, there is no showing of petitioner's basis in the HC Corp. stock. The initial payment by petitioner, if any, for this stock, what petitioner paid when he purchased Ms. Campbell's stock in HC Corp. and to what extent any investment petitioner had in HC Corp. stock may have been absorbed by claimed losses from the Subchapter S corporation in years prior to 1982, is not shown. We hold that petitioner is entitled to no deduction for a loss on HC Corp. stock in 1982. Petitioner initially claimed both the $ 13,500 loss on business furniture and fixtures and the $ 90,000 loss on HC Corp. stock as ordinary losses. However, at the trial petitioner conceded these items would not be ordinary losses, but claimed them as capital losses. However, we hold that petitioner has failed to establish any such losses. Petitioner finally claims a loss of $ 12,000 in 1982 in connection with the seizure of the remaining value on a note which petitioner claims was seized to satisfy a judgment against him obtained in a prior *113 year. The record is totally insufficient to establish any such claimed capital loss from seizure of a note from petitioner in 1982. The note apparently was in connection with the sale or resale of some furniture or fixtures. Petitioner has totally failed to show his basis, if any, in the note. The furniture and fixtures had apparently initially been sold to a Ms. Carmen and so far as this record shows, Ms. Carmen may have paid more on the note to petitioner than petitioner's basis in the assets sold to her. In such event, any further receipts in connection with the sale of any of the furniture and fixtures would have been income and unless it could have been shown the amount of the note had been reported in income, no loss would have occurred, if in fact it was seized. On this record we hold that petitioner has failed to establish any loss in connection with the seizure of a note in 1982. Respondent has conceded that petitioner is entitled to deduct the amounts we have set forth in our findings as interest expense and taxes. [2]
*114 The final issues concern the additions to tax determined by respondent. Section 6651(a)(1) provides for additions to tax of 5 percent a month up to a maximum of 25 percent for failure to timely file a Federal income tax return unless the failure can be shown to be due to reasonable cause and not to willful neglect. The record is clear that petitioner's returns for both 1981 and 1982 were untimely filed. Petitioner offered some vague testimony about being depressed and in a bad state of health in 1981. However, the record shows that in 1981 and 1982 he was actively engaged in business activities. In our view, the record is totally inadequate to show that the late filing of the returns was due to reasonable cause and not to willful neglect. Therefore, we sustain the additions to tax under section 6651(a)(1). Since respondent determined the additions to tax under 6653(a)(1) and (2) in the notice of deficiency, the burden is on petitioner to show error in this determination. The record fails *115 to show error in respondent's determination. All of the underpayment of tax in this case was due to negligence or intentional disregard of rules and regulations. Petitioner kept no books and records with respect to his wagering business and his personal gambling business. No books and records were offered with respect to HC Corp., petitioner contending that they were so waterlogged from a flood that it would have been useless to attempt to save them. However, it is clear that not all receipts of HC Corp. were put into HC Corp.'s bank account and for this reason the bank records were not adequate to show the receipts of HC Corp. in the years here in issue. On the basis of this record we sustain respondent's determination with respect to the additions to tax under section 6653(a)(1) and (a)(2). The entire deficiency in each year is due to negligence. The final additions to tax determined by respondent are under section 6661(a). This section provides for additions to tax if there is a substantial understatement of income tax for any taxable year. It currently provides for a 25-percent *116 addition and is applicable to amounts assessed after October 21, 1986. However prior to its amendment (initially to increase the amount to 20 percent and later to 25 percent), the section provided for an addition to tax for a substantial understatement of 10 percent. The 10 percent amount is the amount determined in the notice of deficiency and respondent has claimed no increased addition. Section 6661(b) provides that there is a substantial understatement of income tax for any taxable year, if the amount of the understatement for the taxable year exceeds the greater of 10 percent of the tax required to be shown on the return for the taxable year or $ 5,000. An understatement is defined as the amount of tax required to be shown on the return for the taxable year over the amount of tax imposed which is shown on the return reduced by any rebate. There are further provisions with respect to reduction of the understatement with respect to items disclosed or items for which there is substantial authority for the treatment used on the return. Here, it appears that there will be a substantial *117 understatement when a recomputation of petitioner's tax liability is made under Rule 155. Although certain items such as the claimed loss on the HC Corp. stock were included on petitioners' 1982 return, no relevant facts with respect to these items were shown on the return. In computing the deficiency in tax respondent allowed for the amounts reported as income on the return. Petitioners have shown no authority for the manner in which items giving rise to the 1982 deficiency were treated on their 1982 tax return. On the basis of this record, we conclude that additions to tax under section 6661(a) of 10 percent is due with respect to the full deficiency for 1982 determined in the Rule 155 computation. Decision will be entered under Rule 155.
Footnotes
*. Equal to 50% of the interest computed on the portion of the underpayment caused by negligence or intentional disregard of rules and regulations. ↩
1. Unless otherwise stated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years here in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. In the petition petitioner raised an issue with respect to whether HC Corp. was entitled to deductions as ordinary and necessary business expenses in the year 1982 in excess of the $ 2,382 allowed by respondent and whether petitioner was liable for self-employment tax under section 1401. No evidence was introduced at the trial or argument made with respect to these items and we assume petitioner has abandoned them.↩